Bradley C. MASSEY v. Lou Ann JAMES

5-5635                                471 S.W. 2d 770

Opinion delivered October 25, 1971

*Robert D. Ridgeway*, for appellant.

*M. C. Lewis, Jr.*, for appellee.

George Rose Smith, Justice. The parties to this appeal were divorced in February, 1970. Both have remarried. During the pendency of the divorce case the parties made a written agreement, approved by the court, about the custody and support of their son Terry, who is now seven years old. The agreement provided that the appellee would have the custody of the boy for nine months of each year and that the father would have custody during the three summer months. The agreement also required the father to make support payments of $60 a month "during the periods of custody of the wife."

The main issue in the present supplementary proceeding is whether the father should be required to make the monthly payments for the three summer months of 1970, even though the mother failed to comply with the court's decree and prevented the father from having the child's custody during those months. The chancellor held

that the payments should nevertheless be made, it being his view that the father's duty to support his son was not affected by the mother's violation of the written agreement and of the decree. We take the opposite view, upon the facts of this case.

When the divorce decree was entered the father was living in Arkansas, but the mother was living in California, with the child. The agreement and decree provided that the father would bear the expense of bringing the child to Arkansas for the summer and of returning the child in the fall.

In May of 1970 Massey, in a telephone conversation with his former wife, ascertained the day on which Terry's school term would end. Massey told the appellee, now Mrs. James, that he would pick up the child in California during the week following the close of the school term. No definite date, however, was specified.

Massey and his present wife duly drove to California and, after having telephoned the night before, went to the James home for the child. It is quite evident from the testimony, and the chancellor expressly found, that Mrs. James did not make a good faith effort to honor the father's right to have the child for the next three months. Mrs. James apparently had done nothing to prepare Terry for the trip to Arkansas with his father. She also interposed various obstacles to the change of custody, such as a demand for a bond to insure the child's return, though the agreement contained no such provision, a statement that she would need a day or two to get the child's clothes ready, and repeated assertions that she didn't think the child should go at all. Finally, in an atmosphere of stress and emotion, the six-year old child was asked by his mother if he wanted to go, and after some hesitation he said that he would rather stay with his mother. It is fair to say that the Masseys were compelled to return to Arkansas without the child, for it is evident that Mrs. James's attitude made it impossible for Massey to obtain the custody to which he was entitled, except by legal proceedings for which he had neither the necessary time nor the necessary funds. Thus the Masseys' long trip was fruitless.

In the light of the facts in the record we do not feel that Massey should be required to make the three $60 payments for the 1970 summer months. In reaching this conclusion we stress the fact that there is no indication whatever in the record that Terry will suffer if the payments are not made. To the contrary, his needs have apparently been completely met by Mr. and Mrs. James. In fact, Mrs. James testified that when the written agreement was made she did not ask for any child support, as she thought it better that the amount be left to her husband's conscience. Even so, the $60 figure was inserted in the agreement as finally drafted. The conclusion we are reaching makes it unnecessary for us to determine whether the additional payments could be required consistently with our holdings in *Sage* v. *Sage*, 219 Ark. 853, 245 S. W. 2d 398 (1952), and *Pence* v. *Pence*, 223 Ark. 782, 268 S. W. 2d 609 (1954).

There is one other minor point. Mr. and Mrs. James have now moved to Hawaii, where he is in military service. The appellant asks that Mrs. James be required to make a bond to insure the performance of her duty (which she recognizes) to finance the child's trip from Hawaii to California, where the father is to pick him up, and the trip from California to Hawaii, after the visit. We have required a bond in somewhat similar situations, where the mother was to furnish transportation. *Langston* v. *Horton*, 229 Ark. 708, 317 S. W. 2d 821 (1958); *Thompson* v. *Thompson*, 213 Ark. 595, 212 S. W. 2d 8 (1948). Here, however, we have no information about how Massey fared in obtaining the custody of his son during the three summer months of 1971, the record having been completed before then. Manifestly, whatever took place that summer may have an important bearing upon the necessity for a bond. We therefore remand the cause to the trial court to allow the parties to proceed further in the matter of the bond, if they so elect. In remanding the cause we should state that we do not agree with the chancellor's disinclination to exact a bond merely because Mrs. James may not comply with the court's order. If Massey is entitled to the bond, the order should be entered.

Reversed and remanded.