ESTATE OF Janice Parker HOUSTON v. Gary Clint HOUSTON

CA 90-108                                    792 S.W.2d 342

Court of Appeals of Arkansas
Division II
Opinion delivered July 5, 1990
[Rehearing denied August 22, 1990.]

*Robert A. Newcomb*, for appellant.

*Howell, Price, Trice, Basham and Hope*, by: *Dale Price*, for appellee.

JOHN E. JENNINGS, Judge. In this divorce case, after the wife's death, the chancellor set aside the decree and the parties' property settlement agreement, and redivided the parties' property. The wife's estate appeals, conceding that the court had the power to set aside the decree, but contending that the chancellor erred in his division of the parties' property. We agree, and modify the trial court's order.

Gary and Janice Houston were married in 1974 and separated in May of 1987. They had no children. Gary Houston filed

an action for divorce on June 9, 1987. About a month earlier, Alfred's Place Limited (apparently a limited partnership which owned a restaurant in the Turks and Caicos Islands), executed a promissory note, payable on demand to Janice Houston, in the amount of $20,000.00. On April 1, 1988, the appellee filed requests for production of documents and interrogatories seeking information about any agreements with or business interests in Alfred's Place on the part of his wife. The requests and interrogatories were never answered and no motion to compel was filed. On October 13, 1988, the parties entered into a written property settlement agreement which recited their intention to finally and fully settle all their property rights. Two days later, Janice Houston suffered a massive stroke and went into a coma; she never regained consciousness. On October 20, 1988, the court entered a decree of divorce which expressly incorporated the parties' property settlement agreement. The first paragraph of that agreement provided:

> Husband has since the time of the separation of the parties caused to be transferred to the wife in June,[1] 1987, $25,000.00 of marital funds. These funds shall be considered the separate property of the wife.

On October 29, 1988, Janice Houston died. On November 10, 1988, the appellee filed a motion to set the decree aside for fraud. The court conducted a hearing and on January 17, 1989, entered an order setting aside the divorce decree on the basis of fraud. In that order the court held "that the defendant is deceased and in no further need of marital property and that the retaining by defendant's estate her one-half interest in the tenancy by entirety real property is more than sufficient to meet the needs of the estate with the exception the plaintiff should have possession of the marital home until his death."

On February 23, 1989, the chancellor entered an order setting aside in turn his order of January 17. The February order recited that the court had no intention of setting aside the portion of the original decree which granted the divorce and had intended

---

[1] This date is clearly wrong. The $25,000.00 was received by the wife at least as early as May 18, 1987.

only to set aside the property division portion of the decree. The February order also recited that the court had not yet made a decision on the property division and would take the matter under advisement.

On March 7, 1989, the chancellor entered a fourth order. In that order the bulk of the marital property[2] was awarded to appellee. The order recited that the property should be divided disproportionately based on the nine criteria set forth in Act 705 of 1979, as amended, codified at Ark. Code Ann. § 9-12-315 (Supp. 1989). That section provides in part:

> (a)   At the time a divorce decree is entered: (1)(A) All marital property shall be distributed one-half (½) to each party unless the court finds such a division to be inequitable. In that event the court shall make some other division that the court deems equitable taking into consideration:
> (i)   The length of the marriage;
> (ii)   Age, health, and station in life of the parties;
> (iii)   Occupation of the parties;
> (iv)   Amount and sources of income;
> (v)   Vocational skills;
> (vi)   Employability;
> (vii)   Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income;
> (viii)   Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and
> (ix)   The federal income tax consequences of the court's division of property.
> (B)   When property is divided pursuant to the foregoing considerations the court must state its basis and reasons for not dividing the marital property equally between the parties, and the basis and reasons should be recited in the order entered in the matter.

---

[2] Appellant estimates the disparity in the value of the property finally awarded at six to one in favor of the appellee, and as best we can tell from this record the estimate may be correct. The difference in dollar value of appellee's share, before and after the redivision, appears to be somewhere near $200,000.00.

The order also set forth as additional reasons for the disproportionate division the doctrine of unclean hands and the wife's lack of need of additional funds, due to her death.

It is apparent from the evidence admitted in the post-decree hearing that Janice Houston had, in May of 1987, made an interest free loan to Alfred Holzfeind. In return she received a demand note for $20,000.00, bearing no interest, together with a written option to buy 50% of the shares of Alfred's Place Limited. The option could only be exercised while she was employed at the restaurant, and therefore became valueless at her death. Mrs. Houston's will was also introduced. In it she left all shares she owned in, and notes due from, Alfred's Place Limited to Holzfeind.

Jack Lassiter, an attorney who had represented Janice Houston in the divorce, testified that during the discussions between the parties and their attorneys, Mrs. Houston stated that she had spent the $25,000.00 which her husband had given her to live on. Mr. Houston testified that he was aware that his wife's purpose in going to the Turks and Caicos Islands was to open a restaurant with Holzfeind. He testified that his wife agreed that he would receive credit for the $25,000.00 in any divorce settlement. An unsigned agreement to that effect was admitted into evidence. Appellee also testified that he "constantly" asked her during the settlement negotiations what had happened to the money and that his wife told him she had spent all but $5,000.00 to live on. He testified that he did not feel that he was given credit for the $25,000.00 in the original divorce decree.

■■ We agree that Janice Houston's false statement during the course of negotiation should not have been considered by the trial court as a significant factor in the redivision of the parties' property and that the doctrine of unclean hands should not have been applied, on the facts of this case. Both parties discuss *Stover* v. *Stover*, 287 Ark. 116, 696 S.W.2d 750 (1985). There the supreme court held the chancellor was entitled to consider the fact that the wife had murdered the husband in making an equitable division of the parties' property. The court expressly limited its holding to the facts of the case. Mrs. Houston's misconduct in the case at bar is not comparable to that which occurred in *Stover*. The doctrine of unclean hands has

traditionally not been used to punish the complainant nor to favor the defendant, but has been applied in the interest of the public and to protect the court and defendant by not allowing the complainant to use the court's powers to bring about an inequitable result. Note, *Equity — Clean Hands Doctrine*, 6 UALR L.J. 559 (1983). In determining whether the clean hands doctrine should be applied, the equities must be weighed. *Bramlett v. Selman*, 268 Ark. 457, 597 S.W.2d 80 (1980); *McCune v. Brown*, 8 Ark. App. 51, 648 S.W.2d 811 (1983). Mr. Houston is not entirely without responsibility for the problem which arose. Although the chancellor's finding that he was misled is supported by the evidence, appellee had somewhat detailed knowledge of the basic fact but failed to follow through with discovery. "Public policy requires that pressure be brought upon litigants to use great care in preparing cases for trial in ascertaining all the facts. A rule which would permit the reopening of cases previously decided because of error or ignorance during the progress of the trial would in a large measure vitiate the effects of the rule of res judicata." *Kulchar v. Kulchar*, 82 Cal. Rptr. 489, 462 P.2d 17 (1969). Furthermore we have difficulty in understanding appellee's contention that he did not receive credit for the $25,000.00, in view of the first paragraph of the parties' property settlement agreement. In any event we hold that the doctrine of unclean hands should not have been applied.

We also think that the chancellor should not have considered the fact that Janice Houston's needs had diminished because of her death as a significant factor in redistributing the parties' property. Again this is not comparable to the exception the supreme court made in *Stover*. Courts are reluctant to upset property awards based on separation agreements after the death of one of the spouses. *See* H. Clark, *Law of Domestic Relations*, § 16.15 at 569 (1968). There are significant practical problems involved in a complete redistribution of the parties' property after the death of a spouse, not the least of which is that the trial court will tend to get only one side of the story.

Appellant concedes that the appellee is entitled to relief and we cannot disagree. When the case is fully developed and we can see where the equities lie we may, on *de novo* review, enter the judgment that should have been entered in the trial court. *See Osborne v. City of Camden*, 301 Ark. 420, 784 S.W.2d

596 (1990). In granting relief from a judgment, equitable considerations may require that only limited relief be granted. *See* Restatement (Second) of Judgments § 74 (1982). Factors which may properly be considered are the consequences of the original judgment, the relative clarity with which it appears that the judgment was unjust, the relative fault of the parties, the requirement of diligence on the part of the person seeking relief, the equities in the interest of reliance, and the balance to be struck between finality and correctness of judgments. *See* Restatement (Second) of Judgments § 74 comment g (1982). Ordinarily, the relief given by a court of equity ought to bear a reasonable relationship to the magnitude of the wrong. Here, the appellee testified that the reason for bringing the suit was his belief that he had not received credit, in whole or in part, for the $20,000.00 promissory note which had been concealed from him. We think it appropriate to award him judgment for $10,000.00. We otherwise leave the original decree intact. The same relief was granted in *Milekovich* v. *Quinn*, 40 Cal. App. 537, 181 P. 256 (Cal. 1919), on similar facts.

We affirm the order of the chancellor, as modified, and remand the case for the entry of an order consistent with this opinion.

Affirmed as modified and remanded.

CORBIN, C.J., and COOPER, J., agree.