Dora ROARK *v.* James Orvall ROARK

CA 90-310                                            809 S.W.2d 822

Court of Appeals of Arkansas
En Banc
Opinion delivered May 22, 1991

*Janet P. Gallman*, for appellant.

*Davis and Associates, P.A.*, by: *Charles E. Davis*, for appellee.

JAMES R. COOPER, Judge. The appellant in this child support case is the mother and the custodial parent of the parties' three children. She and the appellee were divorced on January 16, 1989, pursuant to a divorce decree which granted the divorce to the appellant, gave her custody of the three minor children, provided visitation privileges for the appellee, and required that the appellee pay child support in the amount of $440.00 per week. On February 2, 1990, the appellee filed a petition for modification of the decree, requesting, among other things, modification of child support. The appellant filed a counterclaim, petitioning for modification of the decree and seeking to collect past due child support. On March 26, 1990, a hearing was held and the chancellor entered an order finding that neither of the parties had complied with the divorce decree and that both parties were estopped from raising the issue of back support. Additionally, he

modified the child support required to be paid by the appellee from $440.00 per week to $62.00 per week. From that decision, comes this appeal.

The appellant advances two arguments on appeal: first, that the trial court erred in finding that she was estopped to raise the issue of the appellee's failure to pay child support and that there was no child support due on the ground of estoppel and; second, that the trial court erred in modifying the amount of child support in the absence of a showing of changed circumstances. We disagree with the appellant's arguments and affirm.

■■ Although we review chancery cases *de novo*, we do not disturb the chancellor's findings unless they are clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a). Because the question of the preponderance of the evidence turns largely on the credibility of the witnesses, we defer to the chancellor's superior opportunity to assess credibility. *Callaway v. Callaway*, 8 Ark. App. 129, 648 S.W.2d 520 (1983).

■ The appellant argues that the trial court erred in finding that she was estopped to raise the issue of the appellee's failure to pay child support. Once a child support payment falls due, it becomes vested and a debt due the payee. *Holley v. Holley*, 264 Ark. 35, 568 S.W.2d 487 (1987). Arkansas has enacted statutes in order to comply with federal regulations and to insure that the State will be eligible for federal funding. *Sullivan v. Eden*, 304 Ark. 133, 801 S.W.2d 32 (1990); see Ark. Code Ann. §§ 9-12-314 and 9-14-234 (Repl. 1991). These statutes provide that any decree, judgment, or order which contains a provision for payment of child support shall be a final judgment as to any installment or payment of money which has accrued. Ark. Code Ann. § 9-14-234(a) (Repl. 1991); Ark. Code Ann. § 9-12-314(b) (Repl. 1991); *see Sullivan v. Eden, supra*. Furthermore the court may not set aside, alter, or modify any decree, judgment or order which has accrued unpaid support prior to the filing of the motion. Ark. Code Ann. § 9-14-234(b) (Repl. 1991); Ark. Code Ann. § 9-12-314(c) (Repl. 1991); *See Sullivan, supra*. While it appears that there is no exception to the prohibition against the remittance of unpaid child support, the commentary to the federal regulations which mandated our resulting State statutes, makes it clear that there are circumstances under which a court might

decline to permit the enforcement of the child support judgment. The commentary states:

> [e]nforcement of child support judgments should be treated the same as enforcement of other judgments in the State, and a child support judgment would also be subject to the equitable defenses that apply to all other judgments. Thus, if the obligor presents to the court or administrative authority a basis for laches or an equitable estoppel defense, there may be circumstances under which the court or administrative authority will decline to permit enforcement of the child support judgment.

54 Fed. Reg. 15,761 (April 19, 1989).

In the case before us the chancellor declined to permit the enforcement of the child support judgment claimed by the appellant on the ground that the appellant was estopped because she had disregarded the divorce decree and had interfered with the appellee's visitation rights. The chancellor determined that both parties ignored the initial divorce decree and were thereby estopped from raising the other's non-compliance in order to receive any relief. The chancellor based his ruling on the principle that both parties, by their own conduct, had barred themselves from the aid of equity. *See Pence* v. *Pence*, 223 Ark. 782, 268 S.W.2d 609 (1954). We think that the chancellor's action was grounded in the maxim that he who comes into equity must come with clean hands.

This maxim is not applied to favor a defendant, and has nothing to do with the rights or liabilities of the parties, but is invoked in the interest of the public on grounds of public policy and for the protection of the integrity of the court. 30 C.J.S. Equity § 93 (1965); *see gen. Estate of Houston* v. *Houston*, 31 Ark. App. 218, 792 S.W.2d 342 (1990). Whether the parties are within the application of the maxim is primarily a question of fact and there must be some evidence to justify the application of the doctrine by the court. 30 C.J.S. Equity § 93 (1965).

The chancellor, in determining from the evidence that the court should refuse to recognize the past due child support, based his decision on the appellant's testimony referring to the children as "my babies," her silence when asked to concede the

fact that they were also the appellee's children, and her response that she felt that the children are hers and that the appellee is the reason the children see a counselor. The chancellor also considered letters from the appellant to the appellee telling him to leave the children alone, that she did not want him calling the children or coming to see them, that the police would be waiting for him when he returned and would put him in jail, and that she had sold property he left behind and kept the money.

Although there was testimony from the appellant that she did not deny visitation, that she offered to take the children to see him, and that the appellant broke several promises to visit, we cannot say that the chancellor's determination that the appellant was estopped from asserting and collecting past due child support in a court of equity was clearly against the preponderance of the evidence. On these facts, the chancellor could find unclean hands and properly decline to enforce the judgment. *See Marshall* v. *Marshall*, 227 Ark. 582, 300 S.W.2d 933 (1957).

We disagree with the appellant's argument that the trial court erred in modifying the amount of child support in the absence of a showing of changed circumstance because the record is replete with evidence showing changed circumstances. The party seeking a modification of child support has the burden of showing changed circumstances, and chancery courts have broad powers to modify child support when modification is in the best interest of the child. *Guffin* v. *Guffin*, 5 Ark. App. 83, 632 S.W.2d 446 (1982). No hard and fast rule can be established regarding specific changed circumstances or a necessary degree of change. *Id.* Accordingly, whether a modification in child support is justified by changed circumstances is within the sound discretion of the chancellor, *id*, and his finding will not be disturbed on appeal in the absence of a showing of an abuse of discretion. *Mitchell* v. *Mitchell*, 2 Ark. App. 75, 616 S.W.2d 753 (1981). The record before us shows that subsequent to the divorce the appellee began a different job and he informed the chancellor of his anticipated net income from the new job. The chancellor considered this evidence and applied the Family Support Chart and modified the child support payments accordingly. Furthermore, pursuant to the original divorce decree, the appellee was ordered to pay child support for three children, one of whom was approaching majority and was engaged to be married or was

married at the time of the modification hearing. Moreover, the appellant admitted that the appellee was unable to make the $440.00 per week child support installments awarded under the original decree when she stated that "[t]here aren't very many people who can afford $440.00 a week child support, not even him." She had also sent, in September, 1989, a letter to the appellee agreeing to accept $100.00 per week for child support. Under these circumstances, we hold that the chancellor did not abuse his discretion by applying the Family Support Chart to the appellee's present net income in order to modify child support from $440.00 per week to $62.00 per week.

Affirmed.

JENNINGS and ROGERS, JJ., dissent.

JUDITH ROGERS, Judge, dissenting. With all due respect, I cannot agree with the application of estoppel to withhold execution of judgment for an arrearage in child support based on the facts of this case. The majority affirms the chancellor's holding to remit judgment for past due support based on theories of estoppel and unclean hands by citing general principles setting out these doctrines, and then concluding that appellant's "attitude" and "denial" of visitation support their application here. In so doing, the court has essentially ignored what is unquestionably the applicable law on this particular subject. *See Cunningham* v. *Cunningham*, 297 Ark. 377, 761 S.W.2d 941 (1988); *Bethell* v. *Bethell*, 268 Ark. 409, 597 S.W.2d 576 (1980); *Holley* v. *Holley*, 264 Ark. 35, 568 S.W.2d 487 (1978); *Sharum* v. *Dodson*, 264 Ark. 57, 568 S.W.2d 503 (1978); *Johnson* v. *Arledge*, 258 Ark. 608, 527 S.W.2d 917 (1975); *Kirkland* v. *Wright*, 247 Ark. 794, 448 S.W.2d 19 (1969); *Riegler* v. *Riegler*, 246 Ark. 434, 438 S.W.2d 468 (1969); *Nicholas* v. *Nicholas*, 234 Ark. 254, 351 S.W.2d 445 (1961); *Carnahan* v. *Carnahan*, 232 Ark. 201, 335 S.W.2d 295 (1960); *Brun* v. *Rembert*, 227 Ark. 241, 297 S.W.2d 940 (1957); *Pence* v. *Pence*, 223 Ark. 782, 268 S.W.2d 609 (1954); *Antonacci* v. *Antonacci*, 222 Ark. 881, 263 S.W.2d 484 (1954); *Allison* v. *Binkley*, 222 Ark. 383, 259 S.W.2d 511 (1953); and *Sage* v. *Sage*, 219 Ark. 853, 245 S.W.2d 398 (1952). It is curious to me that the majority has neglected an entire body of law that has developed on the precise issue presented in this case.

Ordinarily, the chancery court has no power to remit accumulated court-ordered support payments, as in this state entitlement to payment vests in the person entitled to it as the payments accrue as the equivalent of a debt due. *See Holley v. Holley, supra.* This principle is now codified at Arkansas Code Annotated §§ 9-12-314 and 9-14-234 (Repl. 1991). The supreme court, however, has recognized that chancery courts have the authority to remit accumulated payments in support, but only under limited circumstances. *Cunningham v. Cunningham, supra.* In this regard, the supreme court has consistently approved of the withholding of judgment for an arrearage in support when it is positively shown that the custodial parent has defeated the non-custodial parent's rights to visitation, such as by removing the child from the jurisdiction of the court and concealing the whereabouts of the child. *See e.g. Sharum v. Dodson, supra; Pence v. Pence, supra.* The supreme court, however, has not hesitated to reverse rulings remitting past due installments of child support when the proof indicates something less than the outright denial of visitation and when there are other considerations militating against the withholding of judgment. *See Holley v. Holley, supra; Kirkland v. Wright, supra; Nicholas v. Nicholas, supra; Carnahan v. Carnahan, supra; Allison v. Bindley, supra.* These cases are based on evidence showing that the failure to pay child support was based on something other than the denial of visitation, or when the non-custodial parent at all times knew where the child or children were located. The court has also seized upon circumstances where the non-custodial parent delayed in taking action to enforce his rights or exhibited no great desire to exercise visitation. As was stated in *Holley v. Holley, supra:*

> There are circumstances in which the court is justified in withholding judgment for unpaid child support installments, such as when the mother having custody deprives the father of temporary custody or visitation rights by failing to comply with the terms of a valid decree governing those rights. *Massey v. James,* 251 Ark. 217, 471 S.W.2d 770; *Pence v. Pence,* 223 Ark. 782, 268 S.W.2d 609. In such cases, the chancery court is not required to give judgment for arrearages accruing during the time the mother's actions have defeated the father's visitation

rights.

. . .

There is no evidence that appellant removed the children so far from their father that he could not visit the children without great expense as was the case in *Antonacci* v. *Antonacci*, 222 Ark. 881, 263 S.W.2d 484. There was no indication that the whereabouts of the children were concealed from him as was the case in *Pence* v. *Pence*, 223 Ark. 782, 268 S.W.2d 609, where the court was fragmented on the question. . . . Obviously, he knew where the children were at all times. In these respects, this case is more nearly like *Carnahan* v. *Carnahan*, 232 Ark. 201, 335 S.W.2d 295, where we reversed the chancery court's denial of judgment for arrearages in child support payments. See also *Nicholas* v. *Nicholas*, 234 Ark. 254, 351 S.W.2d 445.

*Id.* at 42-3, 568 S.W.2d at 491.

In *Bethell* v. *Bethell*, *supra*, the supreme court discussed the application of estoppel to prevent the collection of past due alimony payments. Noting the analogy between alimony and child support cases, the court reviewed its previous decisions regarding the remission of child support payments. Upon this review, the court concluded:

From *Sage*, *Pence* and our subsequent decisions, we can say that, as a general rule, an ex-spouse is entitled to judgment for all past due installments of alimony awarded by a decree of divorce, not barred by the statute of limitations, unless equity cannot lend its aid because of the actions or conduct of the ex-spouse seeking judgment.

*Id.* at 419, 597 S.W.2d at 581. As gleaned from the applicable case law, I conclude that the "conduct" which may justify the withholding of judgment is narrowly confined to that which meaningfully interferes or defeats the non-custodial parent's rights to visitation. Throughout its decisions the supreme court has not taken an expansive view of the application of estoppel to deny judgment, and remission has been based largely on a record showing that the child has been secreted away such as to render nugatory the non-custodial parent's right to visitation. The evidence in this case falls woefully short of this standard.

As per the decree, the visitation allowed appellee was restricted to "reasonable visitation in the defendant (appellee) with [the] understanding the Plaintiff (appellant) will not consent to have children with defendant for overnight visitation unless he is legally married to live-in companion and unless defendant will agree not to expose children to "drug" related parties." Appellee, not appellant, left the state and moved to Florida, leaving appellant and the children behind. Appellee did not trouble himself to appear for the divorce, and he did not appeal from the decree in which appellant was awarded custody, and in which child support and visitation were set. Once appellee left the state, he returned only for the hearing in this matter, which was initiated by his petition for modification filed over one year after the divorce, in which he sought not only specific visitation, but also a reduction in child support and an accounting for personal property sold by appellant. Significantly, appellee did not allege in his pleadings that appellant had denied visitation or request that appellant be held in contempt for such denial, but alleged instead "that no provision was made for the defendant to visit with said minor children" in the decree.

In reference to letters noted by the majority, "telling him to leave the children alone, that she did not want him calling the children or coming to see them, that police would be waiting for him when he returned and would put him in jail," these were written from nine months to a year after the divorce. To put this in context, I quote from one letter dated January 31, 1990.

> I am sending you a copy of Wendy (sic) hospital bill. This is just the Hospital bill. I still got one coming from the Doctors. I know you won't help us. But thought I send it anyway. You never helped us when we needed it.
> Jim, I am tired of begging you to help me with these kids. I don't want you calling them or coming to see them. You are still just thinking of yourself. You could care less what happens to them. They have to eat everyday where (sic) you help or not. I bet you eat everyday don't you. Just leave us alone. I don't want to hear from you anymore.

Appellant explained that this letter was written after appellee had declined to come to Arkansas to see their critically ill child in the hospital, although he was urged to do so.

There were other letters introduced into evidence. On August 21, 1989, appellant wrote:

> I don't know what (sic) going on in your head. But you better never tell the kids I won't let you see them. You can see them any time you want to. Just as long as I don't half (sic) to see you. . . .
>
> Jim you are just as bad as Elmer or worst (sic). You give up your kids for somebody else's kids. How do you sleep at night. How could you just leave us with all the bills and not even try to help us.

In a post script to a letter dated September 10, 1991, appellant indicates that she has just been able to have a phone installed, and she includes the phone number.

The record in this case shows that appellee made no attempt to visit with the children, even though he was given the opportunity. Appellee was asked to visit the child in the hospital, which he did not do, and a visit with the children was offered in the home of appellant's mother in Florida, which he did not take advantage of. Appellee was also able to make contact with the children by phone. Appellee at all times knew where his children were. Furthermore, the fact that appellant sold property gives me no concern as this property was not covered by the decree. It, therefore, cannot be said that appellant violated the terms of the decree from which appellee sought no relief. Appellant testified that she used the money to "make house payments and feed his kids."

Based on our *de novo* review, the facts here simply reveal that appellant's conduct does not measure up to that for which she should be estopped from receiving judgment for past due support. To the extent that appellant's actions can be characterized as "misconduct," her conduct does not rise to the level of being "inequitable," so as to warrant the withholding of judgment. Appellee was afforded opportunities to visit his children. Since appellee made no attempt to visit with them in Arkansas, it is entirely speculative as to whether such an effort would have been futile, as appellee claimed. It is abundantly clear that appellant displayed bitterness, but we may always find hard feelings in a domestic relations case. While I cannot condone such an attitude, her bitterness is somewhat understandable in that appellee left

her with the children to support, and with considerable debts in his wake. There is no evidence in the record that appellant had poisoned the minds of the children against him. In my view, however, the record reveals that appellee's failure to pay child support had nothing to do with the conduct of appellant, or visitation. In adoption cases, it is said that a father's duty to support his minor children cannot be excused on the basis of the conduct of others, unless that conduct prevents him from performing his duty. *Pender* v. *McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979).

I suggest that the majority has extended the application of estoppel beyond any factual scenario encountered in prior case law. I do not think this a wise course as recently the approach has been more restrictive to the end of advancing the collection of unpaid child support. *See Sullivan* v. *Eden*, 304 Ark. 133, 801 S.W.2d 32 (1990). In *Sullivan* v. *Eden*, the supreme court recognized the recent federal legislation in the area of child support and this state's efforts in compliance, and held that chancery courts were no longer to recognize private agreements modifying the amount of child support after July 20, 1987. Additionally, by Act 870 of 1991, the legislature amended Ark. Code Ann. § 9-14-236 to read:

> (b)  In any action involving the support of any minor child or children, the moving party shall be entitled to recover the full amount of accrued child support arrearages from the date of the initial support order until the filing of the action.

The chancellor has ample tools at his disposal if it is felt that the parties are disobeying court orders. In my opinion, the deprivation of child support should be used as a means of last resort. Child support is obviously designed to benefit children, who should not have to suffer for what is perceived as "misconduct" on the part of one parent. I would reverse and remand this case for a determination of the full amount of the arrearage under *Sullivan*, with directions that judgment be entered.

JENNINGS, J., joins in this opinion.