Pamela Arlene RAMSEY *v.* Donald Edward RAMSEY

CA 93-135                                    861 S.W.2d 313

Court of Appeals of Arkansas
Division I
Opinion delivered September 8, 1993

*Mills & Patterson, P.A.*, by: *William P. Mills*, for appellant.

*Hughes & Hughes, P.A.*, by: *Teresa L. Hughes*, for appellee.

MELVIN MAYFIELD, Judge. Pamela Ramsey (Tubbs) appeals from an order of the Chancery Court of White County. She contends that the court erred in failing to order appellee, Don Ramsey, to pay past-due child support. We find no error and affirm.

The parties to this action were divorced in December 1985 but continued to live together with their two daughters until January 1992. In the divorce decree, appellee was ordered to pay $300.00 a month in child support until June 1986, when the

monthly amount would increase to $400.00. In February 1992, appellant filed a contempt motion and sought to recover $25,800.00 in past-due support plus attorney's fees. In response, appellee pleaded the affirmative defense of estoppel, asserting that he had been the children's primary supporter subsequent to the divorce and until the parties separated in 1992. Appellee also sought a modification in child support due to the termination of his disability benefits.

The court held appellant was estopped from claiming the child support arrearage that accrued between December 1985 and January 1992. However, the court found appellee in contempt for failure to pay child support from January 1992 to the time of trial and ordered him to pay the amount which had accrued during that period. The court also modified the child support order to require appellee to pay $25.00 each week for the support of the one child who was still a minor, but the court stated that support might be adjusted by the court if appellee became employed or was awarded social security benefits. The court also ordered appellee to pay an attorney's fee of $1,000.00. Appellant appeals only from that part of the order denying past due child support for the period of December 1985 through January 1992.

█ █ Although we review chancery cases *de novo*, we do not disturb the chancellor's findings unless they are clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a). Because the question of the preponderance of the evidence turns largely on the credibility of the witnesses, we defer to the chancellor's superior opportunity to assess credibility. *Roark* v. *Roark*, 34 Ark. App. 250, 252, 809 S.W.2d 822, 823 (1991); *Callaway* v. *Callaway*, 8 Ark. App. 129, 131, 648 S.W.2d 520, 522 (1983).

At trial, both parties testified that they lived together subsequent to the divorce and paid bills from a joint checking account. Appellee stated that he, appellant, and their two children continued to operate as a family unit. He said that the substantial sums of money he received during that period from disability income and lump-sum disability settlements were used to enlarge the home received by appellant in the divorce settlement, to buy furniture, to pay a debt owed to appellant's father, and to pay family expenses such as taxes, insurance, medical

treatment, food, and clothing.

Appellant, however, disputed that the parties and their children lived as a family unit because appellee was absent from the home for long periods of time and she and appellee did not live together as husband and wife. She also said she did not consent to appellee living in the home but was unable to force him to leave. She stated that appellee had contributed his labor to the enlargement of the house but had not paid the debts he claimed to have paid. And she denied that he contributed to the family expenses.

Jody Ramsey, one of the parties' daughters, testified that her parents had been living together "off and on" since 1985, but that appellee had been there for the most part. She agreed that appellee had helped support the family and that the family had to "pull together" to meet their needs.

Rosie Bradley, the parties' neighbor for fifteen years, testi-. fied that appellee was in the home the majority of time after the divorce. She said that appellee was receiving disability payments part of that time and appellant stated that "she had to keep tabs on the money or [appellee] would blow it." Ms. Bradley said that it was her understanding that after the appellee received one of the disability settlements, he paid off a debt to appellant's father, paid off the furniture bill, and paid to finish the shop building. Ms. Bradley also said that appellant stated she "couldn't make it with these girls without him."

At the conclusion of the hearing, the chancellor stated:

> The Court has listened very closely to the testimony concerning whether or not these parties resided together after the divorce. I listened very closely to what the parties had to say and as to who and what was contributed. Not only did I listen to the parties, but I also listened to Jody testify as to what she had to say and how the parties, how these people functioned as a family unit after the divorce, and also the testimony of Rosie Bradley, a long time next-door neighbor, who testified in very strong terms that the parties, in fact, were living together, and it appears from the testimony of Jody Ramsey, she was a child, but indicated to the Court as well that the parties were living together as a family unit and there was a contribution

being made.

I think credibility lies with the defendant on that issue. I think that for the Court to do anything other than to apply the doctrine of equitable estoppel would be improper and would not be a good result.

■ The appellant first argues that the chancellor erred in finding that the parties and their children had lived as a family unit and that appellee provided support for the family from the divorce in 1985 until the parties' separation in January 1992. Based on the record before us, and in view of the chancellor's superior opportunity to assess the credibility of the witnesses, we cannot say the chancellor's findings in this regard are clearly against a preponderance of the evidence.

Appellant also argues that the chancellor erred in applying the doctrine of equitable estoppel and refusing to enforce payment of the child support arrearages accrued from the time of the divorce in 1985 to the parties' separation in January 1992. She contends that statutes enacted by the Arkansas Legislature prohibited the chancellor from remitting the unpaid and accrued support payments.

■ This court discussed the vesting of child support payments in *Roark* v. *Roark*, 34 Ark. App. at 252-53, 809 S.W.2d at 824, as follows:

Once a child support payment falls due, it becomes vested and a debt due the payee. *Holley* v. *Holley*, 264 Ark. 35, 568 S.W.2d 487 (1987). Arkansas has enacted statutes in order to comply with federal regulations and to insure that the State will be eligible for federal funding. *Sullivan* v. *Eden*, 304 Ark. 133, 801 S.W.2d 32 (1990); *see* Ark. Code Ann. §§ 9-12-314 and 9-14-234 (Repl. 1991). These statutes provide that any decree, judgment, or order which contains a provision for payment of child support shall be a final judgment as to any installment or payment of money which has accrued. Ark. Code Ann. § 9-14-234(a) (Repl. 1991); Ark. Code Ann. § 9-12-314(b) (Repl. 1991); *see Sullivan* v. *Eden*, *supra*. Furthermore the court may not set aside, alter, or modify any decree, judgment or order which has accrued unpaid support prior to the filing of the

motion. Ark. Code Ann. § 9-14-234(b) (Repl. 1991); Ark. Code Ann. § 9-12-314(c) (Repl. 1991); *see Sullivan, supra.* While it appears that there is no exception to the prohibition against the remittance of unpaid child support, the commentary to the federal regulations which mandated our resulting State statutes, makes it clear that there are circumstances under which a court might decline to permit the enforcement of the child support judgment. The commentary states:

> [e]nforcement of child support judgments should be treated the same as enforcement of other judgments in the State, and a child support judgment would also be subject to the equitable defenses that apply to all other judgments. Thus, if the obligor presents to the court or administrative authority a basis for laches or an equitable estoppel defense, there may be circumstances under which the court or administrative authority will decline to permit enforcement of the child support judgment.

54 Fed. Reg. 15,761 (April 19, 1989).

In *Arkansas Department of Human Services* v. *Cameron,* 36 Ark. App. 105, 109, 818 S.W.2d 591, 593 (1991), we went on to explain: "That commentary refers to the defense of equitable estoppel as an example of a circumstance under which enforcement of a child support judgment may not be permitted. . . ."

The Arkansas Supreme Court has held that a party who by his acts, declarations, or admissions, or by his failure to act or speak under circumstances where he should do so, either with design or willful disregard of others, induces or misleads another to conduct or dealings which he would not have entered upon, but for such misleading influence, will not be allowed, because of estoppel, afterward to assert his right to the detriment of the person so misled. *See Bethell* v. *Bethell,* 268 Ark. 409, 424, 597 S.W.2d 576, 583 (1980). And in *Arkansas Department of Human Services* v. *Cameron,* cited above, the Arkansas Court of Appeals affirmed the chancellor's finding that the appellant was estopped from collecting child support arrearages because of her actions leading the appellant into thinking there was going to be

an adoption. 36 Ark. App. at 109, 818 S.W.2d at 593.

■ A party claiming estoppel must prove he has relied in good faith on wrongful conduct and has changed his position to his detriment. *Christmas* v. *Raley*, 260 Ark. 150, 158, 539 S.W.2d 405, 410 (1976). Here, the appellee testified that he did not pay child support into the court registry because he was providing, and appellant was accepting, financial support for appellant and the children while he was living in the home. We also note that appellant did not file the contempt motion until February 1992, after the parties had separated. In addition, the chancellor weighed the contributions the parties were making to the support of the family. The chancellor held that the circumstances were sufficient to establish the elements of estoppel, and we cannot say that the chancellor's finding is clearly against a preponderance of the evidence.

■ Appellant also contends that under this court's holding in *Buckner* v. *Buckner*, 15 Ark. App. 88, 689 S.W.2d 584 (1985), the chancellor was precluded from remitting the arrearages. In that case, the chancellor found that the parties did not live together and that what monies appellant did give appellee were voluntary expenditures and not child support. Here, the chancellor found that the parties functioned as a family with appellee providing support for appellant and the children, and we are not persuaded appellee's expenditures can be classified as "voluntary expenditures."

Finally, we note two cases not cited by either party. *State* v. *Robinson*, 311 Ark. 133, 842 S.W.2d 42 (1992), involved a suit filed in California by the Family Support Division of a District Attorney's Office seeking to obtain child support for the benefit of an unwed mother and her child. Under the provisions of the Revised Uniform Reciprocal Enforcement of Support Act, Ark. Code Ann. §§ 9-14-301 through 9-14-344 (Repl. 1991), the initiating court in California certified the complaint to a court in Arkansas where the father of the child lived. The court here made a finding of paternity, ordered the father to pay child support, and placed the custody of the child in the mother subject to the father's right of visitation. Subsequently, the father filed a petition alleging he had been denied visitation and asking that support payments be suspended until he was allowed to visit the

child. This petition was granted and the mother appealed. The Arkansas Supreme Court held that the Act under which the suit was filed did not give the Arkansas chancery court jurisdiction to address the visitation issue, and the court could not make child support dependent upon visitation. The court stated that the cases of *Roark* v. *Roark* and *Arkansas Department of Human Services* v. *Cameron*, cited above, could be read to conflict with its decision in *State* v. *Robinson*, and concluded: "To prevent any possible confusion, we note that the federal regulation quoted in those cases, 54 Fed. Reg. 15,761 (April 19, 1989), is not related to visitation or custody defenses, and to the limited extent that there may be some conflict, they are overruled." 311 Ark. at 136, 842 S.W.2d at 48.

In *Burnett* v. *Burnett*, 313 Ark. 599, 855 S.W.2d 952 (1993), a case decided after the briefs in the instant case were filed, the trial court had granted a retroactive reduction in child support because of "material changes" in circumstances and because the father had made a "good faith" effort to pay according to the Arkansas Child Support Chart. Our supreme court reversed "[b]ecause the actions of Mrs. Burnett do not justify the application of estoppel to prevent the collection of past due child support payments." 313 Ark. at 605, 855 S.W.2d at 955.

The instant case does not involve a visitation or custody defense, and neither *State* v. *Robinson* nor *Burnett* v. *Burnett* holds that a court cannot decline to permit the enforcement of a child support judgment on the basis of equitable estoppel. To the contrary, both cases refer to Fed. Reg. 15,761 (April 19, 1989) and acknowledge that it provides that "a child support judgment would also be subject to the equitable defenses that apply to all other judgments." The decision in the instant case is based on equitable estoppel, and we affirm that decision.

Affirmed.

COOPER and ROBBINS, JJ., agree.