Geraldine Morrow BARNES *v.* Jerry W. MORROW

CA 00-1089 43 S.W.3d 183

Court of Appeals of Arkansas
Division II
Opinion delivered April 25, 2001

*Nolan, Caddell & Reynolds, P.A.*, by: *Fred L. Caddell*, for appellant.

*Sargent Law Firm*, by: *Shelton Sargent*, for appellee.

LARRY D. VAUGHT, Judge. This is an appeal from the chancellor's order awarding appellant child-support arrearages in the amount of $1,508. The chancellor refused appellant's request for additional arrearages for time that the child was not in her custody on the basis of equitable estoppel. She contends that the chancellor erred in failing to award her child-support arrearages through the date appellee petitioned for termination of support. We affirm.

The parties were married on December 21, 1971. Two children were born of the marriage. Tracy Morrow was born February 11, 1976, and David W. Morrow was born July 6, 1981. The divorce decree filed September 4, 1991, awarded custody of Tracy to appellee and custody of David to appellant. Appellee was also ordered to pay child support in the amount of $35 per week. On October 9, 1991, appellant filed a motion for change of custody regarding Tracy, alleging that appellee refused to take custody over Tracy. The chancellor granted the motion on January 2, 1992, and ordered appellee to pay child support in the amount of $96 per week.

On November 30, 1995, appellee filed a petition to modify child custody, requesting that custody of David be changed from appellant to him. Appellant filed a response; however, no further action was taken. The court, on its own motion, filed an order June

25, 1997, dismissing the case without prejudice stating that no action had been taken during the previous twelve months.

Appellant then filed a motion on June 18, 1999, requesting relief that is not at issue in this appeal. Appellee filed a response and an amended response to appellant's motion. Appellant filed a first amended motion for relief, which is not part of the record. However, appellee filed a response to appellant's first amended motion for relief on February 18, 2000, which is contained in the record. The response indicates that appellant sent David to live with his sister in October 1995, and he eventually moved in with appellee in August 1996. Appellee also filed a petition to modify child custody on February 18, 2000, requesting that custody of David be changed from appellant to him. Appellee further alleged that he should not be required to pay child support after August 1996 when he obtained physical custody of David. Appellant denied the allegations of appellee's petition and stated, *inter alia*, that once a child-support order is in place it cannot be modified except by an additional order and that the courts do not permit forgiveness of past-due child support. On June 5, 2000, appellee filed a notice "raising the affirmative defenses of equitable estoppel, estoppel, laches, resjudication [sic], payment, set off, and waiver" to the allegations contained in the plaintiff's first amended motion for relief.

A hearing was held on June 6, 2000. It was agreed that Tracy was of age and that David no longer lived in his mother's home as of October 23, 1995. The issue was whether appellee owed child support in addition to that which was due at the time the youngest child moved out. The parties stipulated that David left home October 23, 1995, and moved in with his sister and then went to live with his father in August 1996.

Appellant testified at the hearing. She stated that her son went to live with her daughter on October 23, 1995, and then went to live with his father on August 16, 1996. However, she stated that since October 23, 1995, her son lived with her for about five months. She testified that she did not provide any assistance concerning the child's finances or help with school during the time the child was out of her custody. She testified that appellee owed $16,808 in child support at the time her former husband filed a motion to terminate child support in February 2000.

Appellee testified that his son moved in with his daughter on October 23, 1995. He stated that he did not file a petition for reduction in child support until 2000. He explained the delay by

stating he "wasn't thinking." He testified that his wife did not mislead him about where his son was living; he knew his son was living with his sister. Appellee stated that he gave his daughter money to help feed and clothe his son, although he did not keep records of the support. He felt that appellant abandoned their son when she dropped him off at the sister's house. He explained that he wanted custody of his son, but that he had to convince his second wife about his son coming to live with them. He further testified that he hired an attorney in 1994 to file pleadings because one of his children had turned eighteen, but he could not remember if that proceeding was ever completed. He stated that he did not retain an attorney to terminate child support when David went to live with his sister.

A child-support summary was introduced into evidence detailing the child support paid and owed until 2000. The chancellor entered a judgment in favor of appellant in the amount of $1,508. The order states that appellant's "request for child support at any time that the child was not in her custody is denied on the basis of equitable estoppel." Appellant appeals from that part of the chancellor's order.

 Appellant contends that the trial court erred in failing to award appellant child support through the date appellee petitioned for termination of support. Appellant cites Ark. Code Ann. § 9-14-234 (Repl. 1998). This section provides in pertinent part:

> (b) Any decree, judgment, or order which contains a provision for the payment of money for the support and care of any child or children through the registry of the court or the Arkansas child support clearinghouse shall be final judgment subject to writ of garnishment or execution as to any installment or payment of money which has accrued until the time either party moves through proper motion filed with the court and served on the other party to set aside, alter, or modify the decree, judgment, or order.
> (c) The court may not set aside, alter, or modify any decree, judgment, or order which has accrued unpaid support prior to the filing of the motion. However, the court may offset against future support to be paid those amounts accruing during time periods, other than reasonable visitation, in which the noncustodial parent had physical custody of the child with the knowledge and consent of the custodial parent.

In *Roark v. Roark*, 34 Ark. App. 250, 809 S.W.2d 822 (1991), this court addressed the vesting of child-support payments as follows:

> Once a child-support payment falls due, it becomes vested and a debt due the payee. *Holley v. Holley*, 264 Ark. 35, 568 S.W.2d 487 (1987). Arkansas has enacted statutes in order to comply with federal regulations and to insure that the State will be eligible for federal funding. *Sullivan v. Eden*, 304 Ark. 133, 801 S.W.2d 32 (1990); *see* Ark. Code Ann. 9-12-314 and 9-14-234 (Repl. 1991). These statutes provide that any decree, judgment, or order which contains a provision for payment of child support shall be a final judgment as to any installment or payment of money which has accrued. Ark. Code Ann. 9-14-234(a) (Repl. 1991); Ark. Code Ann. 9-12-314(b) (Repl. 1991); *see Sullivan v. Eden, supra*. Furthermore the court may not set aside, alter, or modify any decree, judgment or order which has accrued unpaid support prior to the filing of the motion. Ark. Code Ann. 9-14-234(b) (Repl. 1991); Ark. Code Ann. 9-12-314(c) (Repl. 1991); *see Sullivan, supra*. While it appears that there is no exception to the prohibition against the remittance of unpaid child support, the commentary to the federal regulations which mandated our resulting State statutes, makes it clear that there are circumstances under which a court might decline to permit the enforcement of the child-support judgment. The commentary states:
>
> > [e]nforcement of child support judgments should be treated the same as enforcement of other judgments in the State, and a child support judgment would also be subject to the equitable defenses that apply to all other judgments. Thus, if the obligor presents to the court or administrative authority a basis for laches or an equitable estoppel defense, there may be circumstances under which the court or administrative authority will decline to permit enforcement of the child support judgment. 54 Fed. Reg. 15,761 (April 19, 1989).

*Id.* at 252-53, 809 S.W.2d at 824[1]. This court has often stated that Ark. Code Ann. § 9-14-234 prohibits the modification of child-

---

[1] The supreme court noted in *State v. Robinson*, 311 Ark. 133, 842 S.W.2d 47 (1992), the that its decision could be read to conflict with *Roark v. Roark, supra*, and *Cameron v. ADHS*, 36 Ark. App. 105, 818 S.W.2d 591 (1991). It concluded that "To prevent any possible confusion, we note that the federal regulation quoted in those cases. 54 Fed. Reg. 15,761 (April 19, 1989), is not related to visitation or custody defenses, and to the limited extent that there may be some conflict, they are overruled." *State v. Robinson*, 311 Ark. at 136, 842 S.W.2d at 48. Unlike *State v. Robinson*, the present case does not involve a visitation or

support orders that retroactively affect the time period before the petition for modification was filed and proper notice given to the opposing party. *Laroe v. Laroe*, 48 Ark. App. 192, 893 S.W.2d 344 (1995). However, this court has affirmed the use of equitable defenses to prevent the enforcement of a child-support order, including arrearages. *See Ramsey v. Ramsey*, 43 Ark. App. 91, 861 S.W.2d 313 (1993); *ADHS v. Cameron*, 36 Ark. App. 105, 818 S.W.2d 591 (1991); *Roark v. Roark; supra*. The elements of equitable estoppel are (1) the party to be estopped must know the facts; (2) she must intend that her conduct shall be acted on or must so act that the party asserting estoppel has a right to believe the other party so intended; (3) the party asserting estoppel must be ignorant of the facts; and (4) the party asserting estoppel must rely on the other's conduct to his detriment. *ADHS v. Cameron, supra*. This court applied equitable estoppel in both *Ramsey, supra* and *Cameron, supra*.

In *Ramsey*, the parties divorced in December 1985 and Mr. Ramsey was ordered to pay Mrs. Ramsey $300 a month in child support. The parties continued to live together after the divorce. In 1992, Mrs. Ramsey filed a motion seeking $25,800 in past-due child support. Mr. Ramsey raised the affirmative defense of equitable estoppel, contending that he had been the children's primary supporter since the divorce and until the parties separated in 1992. At trial, both parties testified that they lived together after the divorce and paid bills from a joint checking account. Mr. Ramsey testified that he and Mrs. Ramsey and two children continued to operate as a family unit after the divorce. Mrs. Ramsey disputed this fact contending that Mr. Ramsey was gone from the home for long periods of time and that they did not live together as husband and wife. She also stated that she did not consent to his living in the home. Mr. Ramsey testified that he used a lump-sum disability settlement to enlarge the house Mrs. Ramsey received in the divorce, to pay a debt owed to her father, and to pay family expenses such as taxes, insurance, medical treatment, food, and clothing. One of the daughters testified that her dad helped support the family and that he had been there most of the time since 1985. A neighbor also testified that Mr. Ramsey was in the home the majority of the time after the divorce. She stated that Mrs. Ramsey once told her that she could not make it with her daughters without him. The trial court held that Mrs. Ramsey was estopped from claiming child-support arrearages that accrued between December

custody defense, but rather only a defense to child-support payments.

1985 and January 1992. This court affirmed stating that the circumstances were sufficient to establish equitable estoppel.

Although appellant contends that we would have to overrule *Ramsey* in order to rule in favor of appellee, we believe that *Ramsey* supports our decision. Here, appellant left David with his sister on October 23, 1995, and admitted that she provided no support for him when he was out of her home. Her conduct of dropping her son off gave appellee a right to believe that she intended him to act. Appellee relied on her conduct to his detriment by not making child-support payments to appellant and instead providing the support through his daughter and directly to his son when his son began living with him in August 1996. With a few exceptions, the appellee had been paying child support regularly. Similar to *Ramsey*, appellant waited approximately five years before complaining of appellee's failure to pay child support. Moreover, David went to live with appellee in August 1996 and continued to live with him throughout high school, without any assistance from appellant. The chancellor found that the circumstances were sufficient to establish equitable estoppel.

■ ■ We review the chancellor's decision *de novo*, but do not disturb his findings unless they are clearly against the preponderance of the evidence. *Roark v. Roark, supra.* In this case, we cannot say that the chancellor's finding of equitable estoppel was clearly erroneous.

Affirmed.

CRABTREE, J., agrees.

ROBBINS, J., concurs.

JOHN B. ROBBINS, Judge, concurring. I concur with the majority decision to the extent that it does not require appellee to actually pay appellant for the support that accrued for their son David during the four years or so after August 1996 that David resided with appellee. The rationale, however, for my position differs somewhat from that of the majority.

On our de novo review the majority affirms the trial court's finding that appellant should be barred from collecting this support by application of the principle of equitable estoppel. However, I do not believe it necessary to resort to equity for a defense to enforcement of appellee's support obligation. Equitable remedies and

defenses have historically served to provide relief where law was inadequate to do so. Here, however, the law provided the court with a remedy where a child, for whom support is ordered to be paid, in fact resides with the noncustodial parent. Arkansas Code Annotated sections 9-12-314(c) and 9-14-234(c) (Repl. 1998) provide:

> (c) The court may not set aside, alter, or modify any decree, judgment, or order which has accrued unpaid support prior to the filing of the motion. However, the court may offset against future support to be paid those amounts accruing during time periods, other than reasonable visitation, in which the noncustodial parent had physical custody of the child with the knowledge and consent of the custodial parent.

Pursuant to this statute, appellee's current support obligation could be terminated, at the earliest, when appellee filed his petition on February 18, 2000, seeking such termination. Although appellee was held no longer responsible for current support after that time, Ark. Code Ann. § 9-14-235(a) requires that as to any arrearage in support existing when the obligation to pay current support terminates, the obligor shall pay such arrearage by continuing "to pay an amount equal to the court-ordered child support, or an amount to be determined by a court based on the application of guidelines for child support under the family support chart, until such time as the child support arrearage or judgment has been satisfied."

Applying these statutory provisions to the facts of this case, we should conclude that the $15,000 of support that had already accrued when appellee petitioned to terminate his support duty had become a judgment pursuant to Ark. Code Ann. §§ 9-12-314(b) and 9-14-234(b) (Repl. 1998). Thereafter, even though appellee was no longer responsible for current support, he was obligated by virtue of Ark. Code Ann. § 9-14-235(a) to continue paying the sum of $68 per week until his total arrearage was paid. However, pursuant to §§ 9-12-314(c) and 9-14-234(c) the trial court could offset against this ongoing obligation the $15,000 which had accrued while David resided in appellee's household with the knowledge and consent of appellant. And this, I submit, is what we should consider the trial court to have done, notwithstanding the trial court's reference to equitable estoppel. To do so would not be inconsistent with the cases cited in the majority where equitable defenses against enforcement of support orders were upheld, because none of those cases turned on the fact that the child for whom support was being paid was actually residing away from the

custodial parent in the obligor's household. *See Ramsey v. Ramsey*, 43 Ark. App. 91, 861 S.W.2d 313 (1993) (children, custodial parent, and obligor all resided in same residence as a family unit); *Ark. Dep't of Human Servs. v. Cameron*, 36 Ark. App. 105, 818 S.W.2d 591 (1991) (custodial parent induced obligor to sign consent to adoption but, unknown to obligor, adoption was not pursued); *Roark v. Roark*, 34 Ark. App. 250, 809 S.W.2d 822 (1991) (custodial parent interfered with obligor's visitation rights).

For the foregoing reasons, I believe that the trial court's refusal to require appellee to pay support that accrued while David was residing in his household was not error, but should have been based upon the offset provisions of §§ 9-12-314(c) and 9-14-234(c).