Ernest W. HENDRICKSON *v.* STATE of Arkansas,
OFFICE of CHILD SUPPORT ENFORCEMENT *ex rel.*
Tina D. Henderson (now Feast)

CA 01-714                                          72 S.W.3d 124

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered April 10, 2002

*Law Offices of Charles M. Kester, PLC*, by: *Charles M. Kester*, for appellant.

G. *Keith Griffith*, for appellee.

S AM BIRD, Judge. Ernest Hendrickson appeals from a judgment of the Benton County Chancery Court. He contends that the court erred in its determination of the amount of back child support that he owed by rejecting his defense of

equitable estoppel. Hendrickson further contends that the evidence supports the defense of equitable estoppel because it established (1) that Hendrickson timely paid support for four years until an agreement was made in June 1992 for appellee Tina Feast to forego child support in exchange for joint custody and the ability to claim their daughter as a dependent for income tax purposes; (2) that Hendrickson relied upon this agreement by providing food, clothes, housing, and other things directly to the children, by ceasing to claim their daughter as a dependent on his income taxes, by allowing Feast to live rent-free in a house he owned, and by foregoing modification of the child support award by court order; and (3) that Feast received the benefits of the agreement for nine years without objection. We reverse and remand for the trial court to consider the applicability of the doctrine of equitable estoppel.

Hendrickson and Feast were divorced by a decree filed on November 3, 1988, which incorporated a Child Custody, Separation, and Property Settlement agreement. Feast was awarded permanent primary custody of the two minor children, subject to Hendrickson's right of reasonable visitation. Child support payments were fixed at $500 per month. By agreement between the parties, Hendrickson actually had physical custody of the children for approximately fifty percent of the time, although the visitation provision of the decree was never modified. The amount of child support, however, was modified twice. In 1989, the parties filed a joint petition requesting a reduction of child support to $300 per month, which the court granted. In 1991, the court granted the parties' second joint petition to increase the child-support payment to $400 per month.

Testimony from Hendrickson, Rick Robertson, Feast's husband during the time at issue, and Jared, the parties' oldest child, reveals that around June 1992, Feast decided that since Hendrickson had begun keeping the children fifty percent of the time, Hendrickson should no longer pay child support. In consideration of this new arrangement, Hendrickson agreed to allow Feast to claim their daughter, Miranda, as a dependent for income-tax purposes. Thereafter, Hendrickson supported the children by buying clothing and other items for them, taking them on vaca-

tions, and providing housing and food for them fifty percent of the time, instead of paying support in cash through the court clerk. Although this arrangement continued for nine years, until July 2000, the agreement between Hendrickson and Feast was never the subject of a court order.

On October 9, 2000, the Office of Child Support Enforcement filed a Motion for Contempt and Ex Parte Motion for Show Cause Order, seeking $41,200 in delinquent child support from Hendrickson. In his defense, Hendrickson contended that he relied upon the parties' agreement that he was not to pay child support because the children were with him half the time and he supported them by providing housing, food, clothing, etc. In support of his position, Hendrickson pointed to the fact that Feast claimed their daughter as a dependent for tax purposes and made no demand that he pay any child support for nine years. Feast acknowledged that she had agreed in 1991 or 1992 that Hendrickson did not have to pay a $900 judgment for delinquent child support that had been entered against him, but she denied that she had agreed to waive payment of future support. However, she admitted claiming Miranda as a dependent for tax purposes.

At the conclusion of the hearing, the chancellor concluded that in the absence of the entry of a court order modifying the divorce decree in conformity with the agreement of the parties, the agreement was not enforceable, and that appellant was liable for the entire amount of the arrearage in child support according to the amount set forth in the decree. Therefore, the court held that, as of February 21, 2001, Hendrickson owed $42,000 in child-support arrearages. We think that the chancellor's refusal to consider the applicability of the doctrine of equitable estoppel was erroneous as a matter of law, and we reverse and remand for consideration of the applicability of that doctrine to this case.

In *Roark v. Roark*, 34 Ark. App. 250, 809 S.W.2d 822 (1991), this court addressed the issue of vesting of child-support payments, stating:

> Once a child support payment falls due, it becomes vested and a debt due the payee. Arkansas has enacted statutes in order to comply with federal regulations and to insure that the State will

be eligible for federal funding. These statutes provide that any decree, judgment, or order which contains a provision for payment of child support shall be a final judgment as to any installment or payment of money which has accrued. Furthermore the court may not set aside, alter, or modify any decree, judgment or order which has accrued unpaid support prior to the filing of the motion. While it appears that there is no exception to the prohibition against the remittance of unpaid child support, the commentary to the federal regulations which mandated our resulting State statutes, makes it clear that there are circumstances under which a court might decline to permit the enforcement of the child-support judgment.

*Id.* at 252, 809 S.W.2d at 824 (citations omitted). The commentary to the federal regulations, which mandated our Ark. Code Ann. §§ 9-12-314 and 9-14-234 states:

[e]nforcement of child support judgments should be treated the same as enforcement of other judgments in the State, and a child support judgment would also be subject to the equitable defenses that apply to all other judgments. Thus, if the obligor presents to the court or administrative authority a basis for laches or an equitable estoppel defense, there may be circumstances under which the court or administrative authority will decline to permit enforcement of the child support judgment.

54 Fed. Reg. 15, 761 (April 19, 1989).

█ █    The elements of equitable estoppel are (1) the party to be estopped must know the facts; (2) she must intend that her conduct shall be acted on or must so act that the party asserting estoppel has a right to believe the other party so intended; (3) the party asserting estoppel must be ignorant of the facts; and (4) the party asserting estoppel must rely on the other's conduct to his detriment. *Barnes v. Morrow*, 73 Ark. App. 312, 43 S.W.3d 183 (2001); *Arkansas Dep't of Human Servs. v. Cameron*, 36 Ark. App. 105, 818 S.W.2d 591 (1991). This court has affirmed the use of equitable defenses to prevent the enforcement of child-support orders, including arrearages. *See Barnes v. Morrow, supra; Ramsey v. Ramsey*, 43 Ark. App. 91, 861 S.W.2d 313 (1993); *Arkansas Dep't of Human Servs. v. Cameron, supra; Roark v. Roark, supra.*

We applied the doctrine of equitable estoppel in *Ramsey v. Ramsey, supra*. There, Mrs. Ramsey dropped her son off at her daughter's house and did not provide any support for him when he was out of her home. Mr. Ramsey relied on this conduct to his detriment by not making child-support payments to Mrs. Ramsey. Mr. Ramsey instead provided support directly to his daughter and to his son when his son moved in with him. As in the case at bar, Mrs. Ramsey waited several years before trying to collect past-due child support.

■ In the case at bar, the chancellor simply refused to consider the applicability of the doctrine of equitable estoppel, relying, instead, on his mistaken understanding that unless the agreement of the parties was incorporated in a modification to the divorce decree, the agreement was not enforceable. We hold that, under the evidence presented, it was error for the chancellor to refuse to consider the applicability of the doctrine, and we remand this case to the trial court for that purpose.

We should emphasize that, by this decision, we do not hold that the doctrine of equitable estoppel should be applied in this case. That is a decision for the trial court. We hold only that, under the facts of this case, the trial court erred in refusing to consider the applicability of the doctrine.

Reversed and remanded for further proceedings consistent with this opinion.

NEAL, BAKER, and ROAF, JJ., agree.

PITTMAN and ROBBINS, JJ., dissent.

JOHN MAUZY PITTMAN, Judge, dissenting. This is a child-support case. Appellant is the father and was ordered to pay child support. He did for some time but stopped and failed to pay for nine years. Child Support Enforcement sued him for arrears. Appellant testified that his failure to pay was pursuant to and in reliance on an agreement with his ex-wife, whereby the ex-wife agreed that he should no longer pay child support, and he agreed that she could have the tax deduction for one of the children and would care for and support the children one-half of the time. Appellant's ex-wife disputed this, stating that they had an

agreement but that it only extended to back child support, not future child support.

Appellant cites numerous unpublished cases in his brief and, while acknowledging that this is expressly forbidden by Ark. Sup. Ct. R. 5-2(d), argues that the rule is unconstitutional. This calls for a determination of the constitutional validity of the supreme court's rule, and I believe that we should have certified this case to the supreme court for them to decide the issue.

We have once before certified a case for resolution of this issue. Although it was accepted by the Arkansas Supreme Court, that court decided the case on other grounds, and the question remains unresolved. See Lloyd v. Butts, 343 Ark. 620, 37 S.W.3d 603 (2001).

The question in the present case is of the utmost public interest. Appellant's argument is based on reasons stated in Judge Richard Arnold's opinion in *Anastasoff v. United States,* 223 F.3d 898, *vacated* 235 F.3d 1054 (8th Cir. 2000), in which the court initially held that its rule denying precedential value to unpublished opinions violated the constitution, was contrary to practice that has existed throughout the development of the common law and extends back to Roman times, and corrupted the very essence of the judicial decision-making process by substituting the arbitrary discretion of judges for legal precedent.

I believe that the issue raised by appellant calls into question the integrity of the judicial process as practiced by our court, and should thus have been certified to the Arkansas Supreme Court pursuant to Ark. R. Sup. Ct. 1-2(d)(2). *See* Ark. R. Sup. Ct. 1-2(b)(1), (3), (4), (5), and (6).

My view regarding the need for certification precludes consideration of the merits. Nevertheless, I do not agree that the chancellor clearly erred in failing to find equitable estoppel to be applicable in this case. Here, despite appellant's assertions to the contrary, the evidence of the terms of the agreement and the extent of the consideration were in sharp dispute. I think that the judge could simply have found appellant, as the party most inter-

ested in the outcome, to be lacking in credibility, and that the evidence was sufficient to support the conclusion reached.

I respectfully dissent.

ROBBINS, J., joins in this dissent.