Ronald Lee WATERALL *v.* William Rex WATERALL

CA 03-701                                        155 S.W.3d 30

Court of Appeals of Arkansas
Division II
Opinion delivered March 10, 2004

*Slagle & Gist*, by: *Richard L. Slagle*, for appellant.

*Eudox Patterson*, for appellee.

LARRY D. VAUGHT, Judge. Appellant/cross-appellee Ron Waterall (Ron) appeals the circuit court's findings that he failed to prove a legal entitlement to property owned by his father, appellee/cross-appellant Rex Waterall (Rex), through promissory estoppel and/or constructive trust. On cross-appeal, Rex requests an additional award of liquidated damages, as mandated by Ark. Code Ann. § 18-60-309(b)(1) (Repl. 2003), that was not a part of the circuit court's order. We affirm on direct appeal and reverse and remand on cross-appeal.

In June 1977, Rex purchased an eighty-acre unimproved tract of land in Garland County, Arkansas. In July 1977, he purchased a 24' x 24' building from a house-mover and had it relocated to the eighty-acre tract. Ron repaid Rex the purchase price of the building and moved into it shortly after it was moved to the property. Allegedly, Ron was given permission to live in the building in consideration for him keeping: (1) a right-of-way on the property open; (2) the property clean and presentable; (3) dumpers, timber thieves, etc. off of the property. Ron was not required to pay rent but was required to pay taxes on the property. There is a dispute as to whether there was ever an agreement between the parties for Rex to either give the property to Ron or sell it to him.

Ron lived on the property and made various additions and improvements to it until 1992, when he and his wife Tara entered into a divorce action. As part of their property settlement, Ron and Tara acknowledged that their residence was located on real property owned by Rex. They further agreed that Tara could have the exclusive use and possession of the residence until such time as she remarried or no longer wanted to reside there. At such time as either event occurred, the house (but not the realty) was to be sold

and the proceeds split equally between Ron and Tara. On April 7, 1992, this understanding was further evidenced by a written agreement containing the same terms that was executed by Ron, Tara, and Rex. The agreement further stated that Rex would sell neither the realty on which the house was situated nor the one acre surrounding it without first obtaining written permission of both Tara and Ron.

Shortly after the agreement was executed, Tara remarried. Rex brought an unlawful detainer action, in which Ron intervened, against Tara and her new husband to force them from the property. The parties entered into a consent decree on September 19, 1994, which provided that Tara and her new husband would vacate the property by November 1, 1994, and that the clerk of the court would sell the house. The consent decree further provided that the sale would not include any realty, and that unless the house was sold to either Rex or his agent, the house would be immediately removed from the eighty-acre tract by the buyer.

On October 12, 1994, the circuit clerk held a public sale of the house, which was not attended by either Tara or her attorney. The property was sold to Rex for $100 cash. Ron reimbursed Rex at the time of the sale. A bill of sale was executed by the circuit clerk to Rex. Ron then immediately moved back into the house on the property. Rex testified that again, there was no agreement to give or sell the property to Ron, but that Ron was required to keep it neat and clean. Rex further testified that Ron did not keep the property up, and he asked Ron to move off the property. Rex then filed an unlawful-detainer action on August 20, 2001, after Ron refused to clean up the property. Rex testified that the remaining seventy-nine acres were sold in 2002, and that there was $25,000 placed in escrow by the buyer for the one acre that Ron continued to occupy.

Ron testified that he had made substantial improvements to the house, including the addition of bathrooms, bedrooms, garage, and shed. He estimated the current value of the house at $40,000 to $50,000. Ron testified that he had paid the real estate taxes for the previous three years, and that he would not have spent the money he did improving the property if he had not intended to live there forever. Ron filed a counterclaim seeking the right to occupy the house located on Rex's property "to the extent of one (1) acre surrounding it," for as long as he lived, under theories of promissory estoppel and constructive trust.

Following a trial and the submission of trial briefs, the circuit judge held that Ron had failed to sustain his burden of proof as to the allegations set forth in the counterclaim, and found in favor of Rex, ordering Ron to surrender possession of the property to Rex. This appeal followed.

## Direct Appeal

In bench trials, the standard of review on appeal is whether the trial court's findings were clearly erroneous. *Schueck v. Burris,* 330 Ark. 780, 957 S.W.2d 702 (1997). Ron acknowledges that Rex is the legal title holder to the one acre tract in question. He contends, however, that he is entitled to reside on the one acre for the remainder of his life under the theories of promissory estoppel and constructive trust, and that the circuit court erred in finding that he failed to prove those allegations.

### A. Promissory Estoppel

The black-letter law on promissory estoppel is found in the *Restatement (Second) of Contracts,* § 90:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*See also Superior Federal Bank v. Mackey,* 84 Ark. App. 1, 27, 129 S.W.3d 324, 341 (2003). Whether there has been actual reliance and whether it was reasonable is a question for the trier of fact. *Id.* The party claiming estoppel must prove he relied in good faith on the wrongful conduct and has changed his position to his detriment. *Taylor v. Eagle Ridge Developers, LLC,* 71 Ark. App. 309, 29 S.W.3d 767 (2000). The doctrine of promissory estoppel may be asserted to prevent the application of the statute of frauds. *See Ralston Purina Co. v. McCollum,* 271 Ark. 840, 611 S.W.2d 201 (Ark. App. 1981). Where one has acted to his detriment solely in reliance on an oral agreement, estoppel may be raised to defeat the defense of the statute of frauds. *Country Corner Food & Drug, Inc. v. Reiss,* 22 Ark. App. 222, 737 S.W.2d 672 (1987).

Ron testified that it was his understanding that he was going to be able to live on the property forever; accordingly, he occupied the property from 1979 until the time of trial (except for

a brief period during his divorce proceeding), made valuable improvements totaling at least $40,000, and paid taxes on the property except for the most recent two or three years. However, it is undisputed that the agreement included that Ron could live rent-free on the property if he maintained the right-of-way, kept the property neat and clean, and protected it from dumpers and timber thieves. Although he claims reliance on this agreement to his detriment, there was substantial evidence presented that he did not abide by it. Promissory estoppel may be invoked to enforce an oral contract, but cannot, as argued by Ron, be used to bolster the rights of the one who breached the contract. Therefore, promissory estoppel is not applicable in this case.

### B. Constructive Trust

A constructive trust is an implied trust that arises by operation of law when equity demands. *Tripp v. C. L. Miller*, 82 Ark. App. 236, 105 S.W.3d 804 (2003). It is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. *Id.* The duty to convey the property may arise because it was conveyed through fraud, duress, undue influence or mistake, breach of fiduciary duty, or wrongful disposition of another's property. *Id.* The basis of a constructive trust is the unjust enrichment that would result if the person having the property were permitted to retain it. *Id.* To impose a constructive trust, there must be full, clear, and convincing evidence leaving no doubt with respect to the necessary facts. *Id.* The burden is especially great when title to real estate is sought to be overturned by parol evidence. *Id.*

Ron argues that the doctrine of constructive trust applies, "if it is shown by clear, cogent and convincing evidence that the grantee's promise was intentionally fraudulent or that the parties were in a confidential relationship." *See Bramlett v. Selman*, 268 Ark. 457, 462, 597 S.W.2d 80, 84 (1980). He contends that there is no doubt of a confidential relationship between his father (Rex) and himself. Ron worked for Rex in his garage as an employee since the age of seventeen, and later purchased the garage from him. After the structure in question was purchased, Ron moved in and remained there for the vast majority of twenty-two years. During Ron's divorce from Tara, Ron asserts that he had the advice and counsel of his father, and that Rex sued Tara to regain

possession of the property, with Ron subsequently moving back into the house. There was testimony that Rex purchased the property at the commissioner's sale in order to protect Ron from any further claims by any woman Ron might marry at a later date. He relies on language from our supreme court stating, "equity, however, will impose a constructive trust when a grantee standing in a confidential relation to the grantor orally promises to hold land for the grantor and later refuses to perform his promise." *Bramlett, supra* at 465, 597 S.W.2d at 85.

Ron also points to the agreement executed between Rex, Tara, and himself on April 7, 1992. He points to the language in the agreement whereby Rex agreed not to sell the land upon which the house was located or the surrounding one acre "without first obtaining the written permission of both Tara Lynn Waterall (now Smoot) and Ronald Lee Waterall." However, the very wording of the agreement contradicts Ron's argument. All references to the term of the agreement refer to "until such time as she remarries." The only written agreement expired when Tara remarried.

There is no evidence of a deed from Rex to Ron, nor any type of written agreement promising to either give or sell the land to him. Ron presented no convincing evidence that Rex had any obligation, legal, moral, or otherwise, to convey the property to him. Further, Ron never paid Rex rent while occupying the property. His ability to live in the structure on the property in question was conditioned upon him keeping the property clean and well-kept, which he failed to accomplish. The circuit judge found this insufficient for the imposition of a constructive trust, and we cannot say that this finding is clearly erroneous. Accordingly, we affirm on direct appeal.

## Cross Appeal

Rex's original complaint was for the unlawful detainer of his property. He asked not only for possession, but also for rent in the amount of $300 per month or $9.68 per day from August 14, 2001, and for liquidated damages in the amount of $300 per month or $9.68 per day from August 14, 2001, until such time as possession was restored to him. Arkansas Code Annotated section 18-60-309 governs unlawful detainer actions and states in pertinent part:

> (a) If upon the trial of any action brought under this subchapter the finding or verdict is for the plaintiff, the court or jury trying it

shall assess the amount to be recovered by the plaintiff for the rent due and agreed upon at the time of the commencement of the action and up to the time of rendering judgment or, in the absence of an agreement, the fair rental value.

*(b) In addition thereto in all cases the court shall assess the following as liquidated damages:*

(1) Where the property sought to be recovered is used for residential purposes only, the plaintiff shall receive an amount equal to the rental value for each month, or portion thereof, that the defendant has forcibly entered and detained or unlawfully detained the property; and

(2) Where the property sought to be recovered is used for commercial or mixed residential and commercial purposes, the plaintiff shall receive liquidated damages at the rate of three (3) times the rental value per month for the time that the defendant has unlawfully detained the property.

(c) Thereupon the court shall render judgment in favor of the plaintiff for the recovery of the property and for any amount of recovery that may be so assessed with costs. If possession of the premises has not already been delivered to the plaintiff, the court shall cause a writ of possession to be issued commanding the sheriff to remove the defendant from possession of the premises and to place the plaintiff in possession thereof.

(Emphasis added.)

The circuit court found that Ron unlawfully detained Rex's property, but only awarded damages in the amount of the fair-market-rental value from August 17, 2001, until possession of said lands was delivered. In contravention of Ark. Code Ann. § 18-60-309(b)(1), the circuit court failed to award the mandated liquidated damages in the amount of $300 per month for the same time period. *Perryman v. Hackler*, 323 Ark. 500, 916 S.W.2d 105 (1996). We reverse and remand on cross appeal for the circuit court to award the mandated liquidated damages as set forth in the statute.

Affirmed on direct appeal; reversed and remanded on cross appeal.

STROUD, C.J., and BIRD, J., agree.