Johnnie Russell McGEE  *v.*  Teresa Lynn McGEE

CA 06-1342                                     262 S.W.3d 622

Court of Appeals of Arkansas
Opinion delivered September 19, 2007

*Eugene Bramblett, P.A.*, by: *Eugene D. Bramblett*, for appellant.

*Kinard, Crane & Butler, P.A.*, by: *Stephen R. Crane*, for appellee.

SAM BIRD, Judge. Appellant Johnnie Russell McGee and appellee Teresa Lynn McGee Winkler were divorced on January 5, 1994. This appeal arises out of an order of the Columbia County Circuit Court entered on May 11, 2006, holding that the parties' divorce decree was res judicata on the issue of paternity, requiring appellant to pay child support, and denying appellant's request for paternity testing. Appellant presents three points on appeal: (1) the trial court erred in applying the doctrine of res judicata where the parties agreed before the divorce that appellant would not challenge paternity and appellee would not make appellant responsible for child support or medical bills; (2) the trial court erred in failing to find that appellee was estopped from seeking child support;

and (3) the trial court erred in modifying appellant's child-support obligation without requiring appellee to meet her burden of establishing a change of circumstances sufficient to warrant modification. We find no error and affirm.

The parties were married on July 12, 1991, and divorced on January 5, 1994. On August 13, 1993, appellee gave birth to twins. The divorce decree stated that two children were born of the marriage and awarded custody to appellee but provided that appellant would pay no child support. This case began in February 2005 when appellee filed a petition alleging that the circumstances of the parties had changed and requesting the court to order appellant to pay child support, provide insurance, and be responsible for the children's medical expenses. Appellee also asked the court to order restitution from the date of the divorce decree. Appellant responded, asserting estoppel and fraud because the parties agreed before they divorced that appellant would not be responsible for child support or medical bills if he would not contest paternity. Appellant also filed a motion to require appellee and the children to submit to DNA testing to determine the issue of paternity.

The trial court held a hearing on March 14, 2006. During the hearing, appellee admitted that she was having an extramarital affair with another man during the time that the twins were conceived and that she did not know whether he or appellant was the biological father of the children. She also testified that appellant is listed as the father on the children's birth certificates and that the children think that appellant is their father. Appellant testified that he and appellee both knew at the time of the divorce that he was not the father of the children. He also said that, when they decided to end their marriage, they reached an agreement that he would not challenge paternity of the children and, in exchange, she would not make him responsible for the payment of any child support or medical bills. Appellee testified that she let appellant "handle it all," that he was the only party represented by counsel at the time, and that she did sign the papers providing that there were two children born of the marriage and that appellant would not pay child support.

The trial court entered an order holding that the doctrine of res judicata barred re-litigation of the finding of paternity in the original divorce decree, finding that appellant had a full and fair opportunity to litigate the issue of paternity and chose not to do so. The trial court also held that appellant mandated the terms of the

agreement the parties may have entered into regarding paternity of the children and he therefore could not assert fraud as a basis for challenging paternity. The trial court rejected appellant's defense of estoppel, finding that appellant was aware of the facts regarding the paternity of the children and therefore did not meet his burden of proving that he was ignorant of the facts. Finally, the court held that any agreement between the parties regarding the non-payment of child support would not be binding upon the children, who were not represented in the matter. The trial court then ordered appellant to pay child support in the amount of $741 per month from February 14, 2005, the date appellee filed the petition for support, until the children reach the age of eighteen or graduate high school, whichever last occurs. Appellant brought this appeal.

Our standard of review for an appeal from a child-support order is de novo, and we will not reverse a finding of fact by the trial court unless it is clearly erroneous. *Hardy v. Wilbourne*, 370 Ark. 359, 259 S.W.3d 405 (2007). In reviewing a trial court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.* We give no deference to a trial court's conclusions of law. *Id.*

## I. Res Judicata

For his first point on appeal, appellant argues that the trial court erred in applying the doctrine of res judicata because the issue of paternity was not fully contested in good faith. Res judicata bars re-litigation of a claim in a subsequent suit if certain elements are present. One of these elements is that the first suit was "fully contested in good faith." *State Office of Child Support Enforcement v. Williams*, 338 Ark. 347, 350, 995 S.W.2d 338, 339 (1999). Res judicata bars not only the relitigation of claims that were actually litigated in the first suit but also those that could have been litigated. *Id.* If, however, there was "fraud or collusion in the procurement of the first judgment," res judicata does not apply. *Nat'l Bank of Commerce v. Dow Chem. Co.*, 338 Ark. 752, 759-60, 1 S.W.3d 443, 448 (1999). Appellant explains that the reason he did not contest paternity in the divorce decree was because of an agreement between appellee and him that he would not challenge paternity in exchange for her agreement not to hold him financially responsible for the children. He argues that the trial court erred in finding that he could not be rewarded for his own

fraudulent conduct by being allowed to relitigate paternity because appellee also perpetrated a fraud and was allowed to relitigate child support. We disagree.

The supreme court has held that res judicata bars relitigation of the issue of paternity when paternity was established under a divorce decree. *Williams*, 338 Ark. at 351, 995 S.W.2d at 339. The critical question regarding res judicata of the divorce decree on the issue of paternity is not whether child support was ordered but whether the issue of paternity was decided and, if so, whether appellant had a full and fair opportunity to litigate the issue. *Id.* If it was decided and appellant did have such an opportunity, the divorce decree is res judicata on that issue.

In the case before us, the divorce decree stated that there were two children born of the marriage and granted custody to appellee, subject to the reasonable visitation rights of appellant. The issue of paternity, accordingly, was decided. We reject appellant's argument that he did not have a full and fair opportunity to litigate the issue. He testified that he knew at the time the parties were divorced that paternity was in question and that he did not believe that he was the father of the twins. In fact, the alleged agreement between the parties suggests this was foremost on his mind. He simply chose not to litigate the issue. Res judicata bars not only the relitigation of claims that were actually litigated in the first suit but also those that could have been litigated. *Williams*, 338 Ark. at 350, 995 S.W.2d at 339. We agree with the trial court's determination that, if there was fraud involved here, appellant cannot be the beneficiary of his own fraudulent conduct. Moreover, *Williams* strongly suggests that this is not the type of fraud that will provide a "defrauded" father the opportunity to relitigate the issue of paternity. *Id.* at 352, 995 S.W.2d at 340; *see also Graves v. Stevison*, 81 Ark. App. 137, 98 S.W.3d 848 (2003). We affirm the trial court's holding that res judicata bars relitigation of the finding of paternity in the original divorce decree.

## II. Estoppel

For his second point on appeal, appellant argues that the trial court erred in failing to find that appellee was estopped from seeking child support because appellant relied to his detriment on appellee's promise not to seek child support in exchange for his promise not to challenge paternity. First and foremost, it is settled law in this state that the duty of child support cannot be bartered

away permanently to the detriment of the child. *Storey v. Ward*, 258 Ark. 24, 523 S.W.2d 387 (1975); *Paul M. v. Teresa M.*, 36 Ark. App. 116, 818 S.W.2d 594 (1991). The trial court always retains jurisdiction and authority over child support as a matter of public policy and, no matter what an independent contract states, either party has the right to request modification of a child-support award. *Crow v. Crow*, 26 Ark. App. 37, 759 S.W.2d 570 (1988) (holding agreement not to seek any increases or decreases in child support void as against public policy). Child support is an obligation owed to the child and, even in the absence of a court order requiring a parent to support his or her minor child, a parent continues to have a legal and moral duty to do so. *Akins v. Mofield*, 355 Ark. 215, 225-26, 132 S.W.3d 760, 767 (2003) (citing *Fonken v. Fonken*, 334 Ark. 637, 976 S.W.2d 952 (1998)).

In *Fonken*, the supreme court held that Mrs. Fonken's actions in telling Mr. Fonken to stop paying child support, and his reliance thereupon, were insufficient to relieve Mr. Fonken of his legal obligation to his minor child. In *Paul M.*, we held that, to the extent the father's theory was founded upon the mother's alleged agreement to take full responsibility for their child when she refused to have an abortion, such an agreement was not enforceable because it was not supported by consideration *and* it violated public policy. *Paul M.*, 36 Ark. App. at 118, 818 S.W.2d at 595. We explained that "the interests of minors have always been the subject of jealous and watchful care by courts of chancery, and that a chancery court always retains jurisdiction over child support as a matter of public policy . . . . Insofar as the agreement at issue here represents an attempt to permanently deprive the child of support, it is void as against public policy, and thus cannot form the basis for an actionable claim against appellee." *Id.* at 119, 818 S.W.2d at 595-96. *See also Erwin L.D. v. Myla Jean L.*, 41 Ark. App. 16, 847 S.W.2d 45 (1993) (holding that a mother's agreement or assurances that she would not pursue a paternity action to request support could not validly be interposed by a putative father as a defense in paternity proceeding). We hold that the trial court did not err in failing to find that appellee was estopped from seeking child support.

### III. Change in Circumstances

Finally, appellant contends that the trial court erred in modifying appellant's child-support obligation without requiring appellee to meet her burden of showing a change in circumstances

sufficient to warrant modification. A change in circumstances must be shown before a court can modify an order for child support, and the party seeking modification has the burden of showing a change in circumstances. *Reynolds v. Reynolds*, 299 Ark. 200, 771 S.W.2d 764 (1989). Ordinarily, the amount of child support lies within the sound discretion of the trial court, and that determination may be reviewed and modified to serve the best interests of the children when there are changed circumstances. *Ross v. Ross*, 29 Ark. App. 64, 776 S.W.2d 834 (1989). A trial court's determination as to whether there are sufficient changed circumstances to warrant an increase in child support is a finding of fact, and we will not reverse this finding unless it is clearly erroneous. *Roland v. Roland*, 43 Ark. App. 60, 859 S.W.2d 654 (1993).

In determining whether there has been a change in circumstances warranting an adjustment in support, the court should consider remarriage of the parties, a minor's reaching majority, change in the income and financial conditions of the parties, relocation, change in custody, debts of the parties, financial conditions of the parties and families, ability to meet current and future obligations, and the child-support chart. *Woodson v. Johnson*, 63 Ark. App. 192, 195, 975 S.W.2d 880, 881 (1998) (quoting *Roland*, 43 Ark. App. at 63-64, 859 S.W.2d at 656). It is mandatory that a trial court refer to the family-support chart in making a determination of what is a reasonable amount of child support. Ark. Code Ann. § 9-14-106 (Repl. 2002). This statute creates a rebuttable presumption that the amount contained in the family-support chart is the correct amount of child support to be awarded. *Id.*

In reviewing a trial court's findings regarding child support, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Hardy v. Wilbourne*, 370 Ark. 359, 259 S.W.3d 405 (2007). Over twelve years have passed since the divorce decree awarding no child support was entered in this case. Appellee testified that the children had gotten older, that they played ball, had medical expenses, and quickly outgrew clothing and shoes. She added that "the need is never ending." The parties agreed on the amount of appellant's income for purposes of the family-support chart. Moreover, the only deviation that the trial court made from the family-support chart was a credit given to appellant for his two children that live in his home. *See Freeman v. Freeman*, 29 Ark. App. 137, 778 S.W.2d 222 (1989) (noting that

the fact that the child support ordered was in conformity with the chart was an indication that it was not clearly erroneous). We have examined the evidence in the record and, affording the trial court the deference to which it is entitled, we cannot say that its determination that there were sufficient changed circumstances to warrant an increase in child support is clearly erroneous.

Accordingly, we affirm.

MARSHALL and HEFFLEY, JJ., agree.