Ward WILHELMS *v.* Lori Wilhelms SEXTON

CA 07–316 280 S.W.3d 565

Court of Appeals of Arkansas
Opinion delivered March 19, 2008

*Kennard K. Helton,* for appellant.

*Dunham & Faught, P.A.,* by: *James Dunham,* for appellee.

JOSEPHINE LINKER HART, Judge. Ward Wilhelms argues that the Johnson County Circuit Court incorrectly applied the doctrines of equitable estoppel and laches in ruling that his ex-wife, Lori Wilhelms Sexton, was absolved of responsibility for more than $20,000 in child-support arrearages. Wilhelms also attempts to challenge a subsequent contempt finding that was entered after he had filed his notice of appeal from the above-referenced decree. We affirm the trial court's decision regarding Sexton's child-support arrearages and dismiss Wilhelms's challenge of the contempt citation due to his failure to file a notice of appeal from that ruling.

This action began when Lori Sexton filed a petition to change custody. Wilhelms answered and counter-petitioned to have Sexton found in contempt for her failure to pay child support.

Sexton pleaded equitable estoppel as an affirmative defense. Eventually, Sexton was granted custody and relieved of her past-due child-support obligation.

Certain facts are not in dispute. On May 18, 2000, the parties were divorced, and Wilhelms was awarded custody of the parties' two children. Sexton was ordered to pay $68 per week in support, but she never directly paid any money to Wilhelms. Over the years, this support obligation amounted to approximately $22,000. Prior to the filing of the instant action, Wilhelms had previously, on August 30, 2000, petitioned to enforce Sexton's child-support obligation. He, however, abandoned the claim for child support sought by that petition.

It is also undisputed that Sexton had a long history of illegal drug use and, to the extent she has been gainfully employed, had only entry-level job experience. Her parents have continually stepped in to assist her financially, except for brief periods when she was engaged in relationships with partners of whom her parents did not approve. Currently, Sexton lives in her parents' house. There is no dispute that Wilhelms was aware that Sexton was unlikely to meet her child-support obligations on a consistent basis, and that Wilhelms accepted a great deal of financial assistance from the children's maternal grandparents. This support included clothing for the children, day-care tuition, and food, as well as reduced rent on the home that Wilhelms occupied with his children for nearly five years. The conditions under which Wilhelms accepted this largess, however, are disputed.

Lori Sexton's mother, Mary Ann Sexton, testified that, beginning with a conversation she had with Wilhelms, literally on the steps of the courthouse just after the divorce was granted, Wilhelms consistently disclaimed her daughter's child-support obligation, asserting, "I could never ask for child support. You all do far more than support would do." According to Mrs. Sexton, she took Wilhelms's comment at face value and, in the ensuing eight years, provided $27,694.91 in miscellaneous support, which she itemized by date, description, and amount for the trial court. Mrs. Sexton also asserted that she and her husband allowed Wilhelms to occupy a nearly new rent house that they had recently constructed pursuant to an express agreement that they would accept reduced rent in remission of their daughter's child-support obligation. She claimed that the house could command $500 per month in rent, but Wilhelms and the children were allowed to stay there for less — $200 per month the first year while the youngest

child was in daycare, and an undetermined discount after that was a product of Wilhelms's fluctuating finances. According to Mrs. Sexton, this rental arrangement and its delinquency gave Wilhelms an additional $11,500 credit against Sexton's child-support obligation.

Lori Sexton confirmed the existence of her parents' financial arrangement with Wilhelms and that he eschewed receiving support from her in favor of accepting what her parents provided. She also claimed that Wilhelms told her if she would "act right," she would not have to pay support. Sexton asserted that Wilhelms's failure to prosecute his August 30, 2000 contempt petition after he filed it was directly attributable to his recognition of the support that her parents provided for the children. Furthermore, she claimed that she gave the children spending money and bought clothing for her children in addition to paying her parents $200 per month to reimburse them for some of the support that they provided for her children. The parties' eldest child, T.W., corroborated the support arrangement, testifying that her clothes were bought exclusively by her mother and grandmother.

Wilhelms disputed the existence of an express agreement to accept support in kind from Lori Sexton's parents in lieu of child support. Aside from the first year when B.W. was in daycare, he denied getting a break on the rent, claiming that he was only required to pay $400 per month. He did, however, acknowledge that the Sextons gave generously to his children, and he conceded that the "provision of clothes and things" relieved him of the necessity of purchasing those items. Nonetheless, Wilhelms stated that he objected to Mrs. Sexton's lavish spending, which he believed put the children on a "pedestal" and "bought" the children's allegiance.[1] Judy Wilhelms, Wilhelms's wife since 2003, disputed the amount of rent that was due when they lived in the Sexton rent house. She claimed the rent was only $400 per month. However, she confirmed that the Sextons spent lavishly on the children.

The trial court denied Wilhelms's counterclaim for past-due support. It found that Sexton had "successfully asserted" each of the elements of equitable estoppel as well as laches. Further, the

---

[1] We acknowledge that there is significant evidence in the record of parental alienation undertaken by Lori Sexton. However, even though we find such conduct deplorable, Wilhelms has not appealed the custody award.

trial court specifically found that there was an agreement that Sexton not pay child support "in lieu of other financial child support that she was providing, either herself, or through her parents." The trial court also made express findings that Wilhelms's testimony was not credible and that Mrs. Sexton's testimony was credible.

Before we address Wilhelms's points on appeal, we first take up Sexton's argument that this appeal should be dismissed because we do not have appellate jurisdiction. This argument is based on Wilhelms's failure to strictly follow the requirements of Rule 3(e) and Rule 5 of the Arkansas Rules of Appellate Procedure–Civil. Citing *Cloverdale Neighborhood Association v. Goss*, 368 Ark. 675, 249 S.W.3d 810 (2007), for the proposition that compliance with Rule 5 must be "strict," Sexton asserts that this appeal must be dismissed because Wilhelms failed to follow the procedures specified in the rule for securing an extension of time to prepare the trial transcript,[2] which makes its filing untimely. She also raises Wilhelms's untimely arrangement with the court reporter as grounds for the dismissal of this appeal. We decline to dismiss this appeal.

■ In *Holloway v. Arkansas State Board of Architects*, 348 Ark. 99, 71 S.W.3d 563 (2002), the supreme court held that an appellee may not challenge the appellant's failure to strictly comply with Rule 5 after a transcript has been lodged within the time granted by the trial court. That is exactly the situation here. Likewise, Wilhelms's failure to strictly comply with Rule 3(e) is of no moment because the court reporter has been paid and the record

---

[2] Rule 5(b)(1)(C) states in part:

(b) Extension of time.

(1) If any party has designated stenographically reported material for inclusion in the record on appeal, the circuit court, by order entered before expiration of the period ... may extend the time for filing the record only if it makes the following findings:

(A) The appellant has filed a motion explaining the reasons for the requested extension and served the motion on all counsel of record;

(B) The time to file the record on appeal has not yet expired;

(C) All parties have had the opportunity to be heard on the motion, either at a hearing or by responding in writing[.]

has been lodged. *Clayton v. Ideal Chem. & Supply Co.*, 335 Ark. 73, 977 S.W.2d 228 (1998). We therefore consider Wilhelms's appeal on the merits.

Wilhelms argues that the trial court incorrectly applied the doctrines of equitable estoppel and laches in ruling that Sexton, who never paid "one penny" of child support, was "absolved" of responsibility for more than $20,000 in arrearages. Wilhelms notes that he denied that he ever told Mrs. Sexton that he was not going to "make" her daughter pay child support. Furthermore, he asserts that Mrs. Sexton acknowledged that he never asked her to spend money on the children and that he never told her that her daughter did not have to "worry about child support" because the grand-parents were spending money on the children. Wilhelms acknowl-edges that equitable defenses may be invoked when a party attempts to enforce a child-support order. He contends, however, that the trial court erred in finding that the elements of estoppel were present in this case. Specifically, he argues that the alleged "agreement" was between him and Sexton's parents and that Sexton did not "change her position" in reliance on what her mother was doing. Wilhelms likewise challenges the application of laches to this case. He notes that in *Cunningham v. Cunningham*, 297 Ark. 377, 761 S.W.2d 941 (1988), the supreme court held that nine years was not a sufficient delay in bringing an action to recover a child-support arrearage, and he asserts that his delay of five years should also be insufficient to constitute laches.

Our standard of review for an appeal from a child-support order is de novo, and we will not reverse a finding of fact by the trial court unless it is clearly erroneous. *McGee v. McGee*, 100 Ark. App. 1, 262 S.W.3d 622 (2007). In reviewing a trial court's findings, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.* We give no deference to a trial court's conclusions of law. *Id.*

We believe that the instant case is analogous to and governed by the principles that this court announced in *Lewis v. Lewis*, 87 Ark. App. 30, 185 S.W.3d 621 (2004). In *Lewis*, we reversed a trial court for failing to consider whether estoppel might apply to a situation where an ex-wife was seeking to collect her marital share of her ex-husband's military retirement when she had agreed not to seek her share in lieu of providing child support while the children were in the custody of her ex-husband. *Id.* We held that where the agreement had been completely executed, it could give

rise to an estoppel. *Id.* As we noted in *Lewis*, estoppel arises where, by the fault of one party, another has been induced, ignorantly or innocently, to change his position for the worse in such a manner that it would operate as a virtual fraud upon him to allow the party by whom he has been misled to assert the right in controversy. In *Lewis*, we were guided by this court's earlier holding in *Ramsey v. Ramsey*, 43 Ark. App. 91, 861 S.W.2d 313 (1993), where we affirmed a trial court's decision not to enforce a support decree where, after the entry of the decree, the parties continued to reside together as a family unit and the ostensible payor had effectively supported the children.

▪ In the instant case, the trial court found the existence of an agreement that Wilhelms would forego child support in exchange for the Sextons' help with the children's expenses for everything from clothing and shelter to school lunches. While such an agreement might not have been enforceable, as we noted in *Lewis*,[3] the instant case is analogous to *Lewis* in that Wilhelms only attempted to repudiate the arrangement after the Sextons had fully performed. As we noted previously, in testimony that the trial court expressly found to be credible, Mrs. Sexton recounted that she and her husband provided $39,143.91 worth of shelter, clothing, food, and other support to the children. This total is nearly double the approximately $20,000 that Wilhelms had sought to collect from Sexton. Moreover, Wilhelms does not cite any law that proscribes a person or persons from voluntarily paying the obligations of another, as was the case here. Accordingly, we hold that the trial court did not err in finding that Wilhelms was estopped from attempting to collect the child-support arrearage from Sexton.

Finally, to the extent that Wilhelms is challenging the existence of the agreement whereby he would forego collecting child-support payments from Sexton in favor of what he would receive from her parents, we hold that matter rests entirely upon which side the trial court chose to believe. As noted previously, we defer to the trial court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *McGee, supra.* Because we find that the trial court did not clearly err in finding that Wilhelms was estopped from

---

[3] We noted that an agreement promising not to seek child support was not an enforceable contract.

collecting past-due child support from Sexton, we need not address that portion of Wilhelms's argument concerning laches.

 Wilhelms also attempts to appeal from an order of contempt that was entered after he had appealed from the August 29, 2006 order that excused Sexton from paying her child-support arrearages. We note, however, that the record does not contain a notice of appeal from a December 6, 2006 order finding him in contempt for failing to pay child support since the change of custody. Our supreme court has held that failure to file a timely notice of appeal deprives the appellate court of jurisdiction. *Rossi v. Rossi*, 319 Ark. 373, 892 S.W.2d 246 (1995). Accordingly, we must dismiss Wilhelms's appeal of this order.

Affirmed in part; dismissed in part.

ROBBINS and MILLER, JJ., agree.