2009 Ark. App. 178

**Daryl GUFFEY, Appellant,**

v.

**Kim Billings COUNTS & Office of Child Support Enforcement, Appellees.**

No. CA 08–736.

Court of Appeals of Arkansas.

March 11, 2009.

The Kester Law Firm, by: Charles M. Kester and Dawn C. Egan, Fayetteville, for appellant.

Kimberly A. Counts, pro se appellee.

G. Keith Griffith, Office of Child Support Enforcement, Van Buren, for appellee OCSE.

D.P. MARSHALL JR., Judge.

A noncustodial parent, trying to do the right thing, voluntarily increases his court-ordered child-support payments because his income has increased. No court order mandating and memorializing the change is ever entered. More than seven years pass. Faced with a petition from the Office of Child Support Enforcement for an increase in support, the noncustodial parent pays nothing for four months. He then settles with OCSE on an increased support amount going forward. May the

noncustodial parent get the benefit of his years of overpayments against the four months of unpaid support? The circuit court said no, giving various reasons. We conclude, based primarily on the voluntariness of the overpayments and a slightly different estoppel analysis, that the circuit court answered the question correctly.

## I.

The material facts are undisputed. Daryl Guffey and Kim (Billings) Counts divorced in 1995. The circuit court awarded custody of the parties' two sons to Counts and ordered Guffey to pay child support. After one modification, Guffey was obligated to pay about $400.00 a month. In 2000, Guffey wrote Counts. He provided copies of some pay stubs showing increased income and explained that he had used the enclosed chart from Administrative Order No. 10 to calculate his support obligation at $694.00 a month. Guffey suggested that this arrangement would "bring to an end either of us spending any more money on attorney fees."

At an earlier hearing, the chancellor had emphasized that private agreements changing support were not binding. In response to Guffey's letter, Counts contacted her lawyer. She then requested more financial information from Guffey. She also suggested preparing an agreed order that her lawyer could present to the court to avoid more attorney's fees. No modification order was ever entered. For seven years, Guffey paid the increased amount every month into the court's registry, noting on his check the month covered by the payment. The records showed the overpayments. Counts used the money each month for their sons' needs.

In the fall of 2007, the OCSE petitioned the court to increase Guffey's monthly obligation. For the four following months, acting on the advice of counsel, Guffey paid no support. He and OCSE eventually settled, resulting in an order requiring Guffey to pay about $925.00 a month. Counts asked the circuit court to hold Guffey in contempt for the four-month gap in payments. Guffey responded that he was entitled to credit as to those months for his seven years of overpayments.

After a hearing, the court held Guffey in contempt and ordered him to pay four months' worth of support at the earlier court-ordered amount—approximately $1600.00 total—over time. The court gave a thorough ruling from the bench, which was later reduced to an order. The court gave many reasons for its conclusion: Guffey never intended for the overpayments to be credits; the payments were child support, not future child support; they were gifts; and "principles of equity and equitable estoppel" barred Guffey from claiming credit for them against his four-month gap.

## II.

We are not persuaded by Guffey's main argument that, in essence, the circuit court's decision retroactively modified his child-support obligation. Absent a finding of fraud in procuring the order, our law forbids retroactive modifications of support orders. *E.g., Yell v. Yell*, 56 Ark.App. 176, 179, 939 S.W.2d 860, 862 (1997). Like all parents, Guffey had a legal duty to support his minor children apart from any court order. *Ford v. Ford*, 347 Ark. 485, 490, 65 S.W.3d 432, 440 (2002). Under the longstanding order in this case, Guffey's legal duty was quantified at about $400 a month. But he volunteered to pay more and did so regularly. The scope of his enforceable legal obligation remained unchanged until the OCSE petitioned the court in late 2007 to order increased support. *Yell*, 56 Ark. App. at 179, 939 S.W.2d at 862.

The circuit court concluded that Guffey's overpayments were both child support and a gift. Guffey attacks that characterization, arguing that the money was either one or the other but not both. We see no gift. Guffey paid more because he recognized his inchoate legal obligation to increase support based on increased income. His acts were commendable, but he was not giving presents. This was voluntary child support month by month. The voluntariness of the payments is legally important. One who pays without legal obligation is not, in general, entitled to claim the benefit of his voluntary payment. *Bishop v. Bishop*, 98 Ark.App. 111, 114, 250 S.W.3d 570, 572 (2007); *see also Glover v. Glover*, 268 Ark. 506, 508, 598 S.W.2d 736, 737 (1980). Reading the bench ruling and order as a whole, we are convinced that the circuit court correctly focused on the voluntariness of Guffey's overpayments. The gift label is not dispositive.

The core question is whether Guffey was entitled to wash his later nonpayments with his prior overpayments. We think not. How can this be if, as Guffey presses, our law refuses to recognize private agreements modifying child support? *E.g., Burnett v. Burnett*, 313 Ark. 599, 603–05, 855 S.W.2d 952, 954–55 (1993).

Guffey makes a strong point. For example, if either he or Counts had petitioned the circuit court to enforce their $694.00–a–month agreement, the court would have said no, and made an independent judgment about the correct support amount—starting from the petition date—based on Guffey's income. *Yell, supra.* Neither parent, however, sought to enforce their agreement. Instead, the circuit court enforced the prior order for $405.00 a month, accepted Counts's estoppel defense, and barred Guffey from belatedly claiming the benefit of his voluntary overpayments.

Estoppel resolves the tension here. The books are full of cases holding that, notwithstanding the law against enforcing private support agreements, estoppel is available to do equity between the parties. *E.g., Wilhelms v. Sexton*, 102 Ark.App. 46, 51–53, 280 S.W.3d 565, 569 (2008); *Chitwood v. Chitwood*, 92 Ark.App. 129, 137–38, 211 S.W.3d 547, 552 (2005); *Lewis v. Lewis*, 87 Ark.App. 30, 33–34, 185 S.W.3d 621, 623 (2004); *Barnes v. Morrow*, 73 Ark.App. 312, 317–18, 43 S.W.3d 183, 187–88 (2001); *Ramsey v. Ramsey*, 43 Ark.App. 91, 96–98, 861 S.W.2d 313, 316–17 (1993). That is precisely what the circuit court did in this case.

The parties spar about whether modern equitable-estoppel doctrine applies to the essentially undisputed facts. *Chitwood*, 92 Ark.App. at 138, 211 S.W.3d at 552 (elements). It does not. The circuit court, as Guffey reminds us, said as much in its bench ruling. The court found no hidden knowledge on Guffey's part. He did not make each monthly payment knowing, while Counts did not, that he was building up a credit balance that he could use to cover future obligations. The court found, and the record leaves no doubt, that Guffey intended each monthly payment to support his sons' needs for that month. Guffey (or his new wife) so noted on every check. Guffey's intentions, as he points out, do not decide the support issue. *Glover*, 268 Ark. at 507–09, 598 S.W.2d at 736–37 (noncustodial parent's intentions that medical care and airfare were child support not dispositive). But they drive the estoppel analysis. Absent knowledge on Guffey's part, and corresponding lack of knowledge on Counts's part, the modern understanding of equitable estoppel does not fit the case. *Chitwood, supra.*

Here again, we must avoid the tyranny of legal categories. "In using the term 'estoppel,' one is of course aware of its kaleidoscopic varieties." John H. Wigmore, *The Scientific Role of Consideration in Contract, in* LEGAL ESSAYS IN TRIBUTE TO ORRIN KIP MCMURRAY 641, 643 (Max Radin and A.M. Kidd, eds., 1935). The circuit court rested its order on "principles of equity and equitable estoppel," concluding that "it would be wholly inequitable to allow the defendant to claim a credit for the alleged overage paid since February 2000." The conclusion was sound, as was the invocation of equitable principals and estoppel in general. We may affirm on any ground supported by the record. *Fritzinger v. Beene,* 80 Ark.App. 416, 424, 97 S.W.3d 440, 444 (2003). And we therefore put to one side the particular variety of estoppel mentioned by the circuit court.

■ The correct ground, we conclude, is the promissory variety of estoppel. *Waterall v. Waterall,* 85 Ark.App. 363, 367–68, 155 S.W.3d 30, 33 (2004). Guffey told Counts that he would pay the higher monthly amount of support. He did so voluntarily and faithfully for seven years. She accepted the payments, relying on them month by month to support their children. Because of her reliance, it would be inequitable to rewind the years and give Guffey credit now for some of the overpayments against his four months of unpaid child support. *Waterall,* 85 Ark.App. at 367–68, 155 S.W.3d at 33.

■ We have found no Arkansas case applying this variety of estoppel in a child-support dispute, though this court has indicated that the doctrine may be available. *Shroyer v.* ⌐₇*Kauffman,* 75 Ark.App. 267, 273, 58 S.W.3d 861, 865 (2001). For several reasons, we have no hesitation in applying promissory estoppel in this case. First, as we said, precedent approves applying estoppel principles in these kinds of

cases. Second, doctrinal flexibility is the hallmark of equity. Third, long before the modern hardening of equitable estoppel into "essential" elements, Arkansas recognized and applied the root principle at work:

> Equitable estoppel is the effect of the voluntary conveyance of a party, whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires corresponding right, either of property, of contract, or of remedy.

*Geren v. Caldarera,* 99 Ark. 260, 263, 138 S.W. 335, 336 (1911) (quotation and citation omitted). So described, the principle covers promissory estoppel, equitable estoppel, and many other varieties of estoppel. The point is the estoppel—the bar—raised by the parties' conduct. Guffey's voluntary overpayments of monthly child support for seven years, and Counts's reliance by spending the money each month for their sons, precludes Guffey from getting belated credit for his past extra support.

Our holding is not in conflict with *Burnett,* and like cases, which refuse to enforce private support agreements. In the circumstances presented, the circuit court made no error in refusing Guffey's claim for a credit for his voluntary overpayments against his four months of unpaid support. Counts was entitled to raise an estoppel defense to that claim. *Cf. Shroyer, supra.* Nor are we persuaded that *Glover v. Glover, supra,* decides this case in ⌐₈Guffey's favor either. Payments made into the registry are certainly child support. Guffey's overpayments were. But that truth does not compel an impervious legal conclusion

that Guffey was entitled to credit for his overpayments. Estoppel was neither raised nor decided in *Glover.* 268 Ark. at 507–09, 598 S.W.2d at 736–37.

We recognize, too, that the chancellor told them, twice, in an earlier hearing that Guffey would receive credit for support payments made through the registry. Reading those statements in context, however, it is clear that the court was cautioning Guffey about the risk of paying Counts around the system. But if Guffey had made such payments, and if Counts had admitted receiving them, then our law would not pretend the payments were never made. *Ramsey, supra.* The chancellor's admonition was correct but incomplete. Like *Glover,* the chancellor's statements do not decide this case. Estoppel principles and the voluntary-payment rule do.

### III.

One point remains. On reply, Guffey argues that OCSE has no standing on appeal. Here Guffey is correct. OCSE settled with Guffey, and did not participate in the hearing about the overpayment issue. Before the hearing OCSE even argued that the records showed a credit for Guffey. On appeal, OCSE and Counts filed a joint appellees' brief supporting the judgment. She is *pro se* on the brief. OCSE, however, has no standing to argue the issues presented on appeal. At this point, it has no dog in the overpayment hunt. *Insurance from CNA v. Keene Corp.,* 310 Ark. 605, 610, 839 S.W.2d 199, 202–03 (1992). And OCSE cannot make new arguments on appeal, especially ones contradicting its position below. *Taylor v. Producers Rice Mill, Inc.,* 89 Ark.App. 327, 329–30, 202 S.W.3d 565, 567 (2005). We found the brief helpful. But we consider it on behalf of Counts alone; and we reject OCSE's request that we award the Office fees for preparing the brief.

Affirmed.

KINARD and GLOVER, JJ., agree.