
# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-16-1042

| | |
|---|---|
| KIMBERLEE R. GUIN<br><br>APPELLANT<br><br>V.<br><br>RICHARD D. MCWHORTER<br>APPELLEE | **Opinion Delivered** September 20, 2017<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72DR-08-1917]<br><br>HONORABLE BETH STOREY BRYAN, JUDGE<br><br>AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Kimberlee Guin appeals from an order of the Washington County Circuit Court reducing the child-support obligation of appellee Richard McWhorter. On appeal, Guin argues that the trial court erred in failing to provide the required calculations to support its order and in reducing child support for improper reasons. We find no error and affirm.

After their divorce in May 2009, the parties shared joint custody of their four children pursuant to a child-custody and support agreement incorporated into the decree. The agreement provided that McWhorter would pay child support of $4800 a month based on a formula set out therein plus twenty-eight percent of his net bonuses. In February 2015, an order was entered incorporating a mediation-settlement agreement regarding the remaining two minor children. The agreement provided that the parties would continue equal joint custody of CM, but Guin's custody of ZM was reduced to alternating weekends (from Thursday after school to Monday morning). Additionally, the parties agreed to child

SLIP OPINION

support of $5500 a month plus fifteen percent of McWhorter's net bonuses.

In February 2016, McWhorter filed a petition to modify child support based on a reduction in his income. After a bench trial, the trial court reduced McWhorter's child support to $1700 a month and five percent of his net bonuses. Guin now appeals.

McWhorter, a urologist employed by Washington Regional Medical Center, introduced into evidence his past and current employment contracts, his pay stubs, and his tax return. Prior to January 2016, his base salary was $500,000, and he had the opportunity to earn more by taking additional call. Due to the hospital's hiring of two additional urologists, McWhorter's base salary was reduced in 2016 to $401,550, and only minimal extra call was available. He received a bonus of approximately $60,000 a year both before and after the salary reduction. McWhorter also received income from an investment.

At the time of the hearing, ZM was seventeen years old, and CM was fourteen years old. McWhorter testified that he paid for the children's clothes, cell phones, and insurance. He made ZM's car payment and paid for gas, and he put money into a bank account for ZM's use via a debit card. McWhorter also paid for the children to train and compete at national track meets. He said that these expenses had increased since 2014 because ZM was competing in more national meets. McWhorter testified that he also paid for the expenses of the parties' two older children, who were in college, and he had significant credit card and student loan debt. McWhorter's affidavit of financial means listed $16,503 in monthly expenses, including debt payments.

2

SLIP OPINION

Guin testified that she worked at an event company she had started three years earlier, but she had not yet earned any income from it. She knew it would take time to make a profit, and her goal was to earn income by the time child support ended. She obtained a master's degree in journalism and communications in May 2015. Guin said that she paid for whatever the children needed but did not "throw money at them" like McWhorter did. She said that McWhorter often spent money on them preemptively and did not ask her to contribute. Guin said that she bought clothing for the children but that ZM often declined her offers of gas or food money because he had the debit card funded by McWhorter. She denied that McWhorter was now spending more money on track meets because she claimed ZM was attending the same meets as in the past. Guin said that she also contributed to her older children's expenses. Her affidavit of financial means showed $5605 in monthly expenses and an additional $1316 in debt payments. She said that her new husband contributed $4000 monthly to a joint account but that he had additional expenses and debts.

Our standard of review from a child-support order is de novo on the record, and we will not reverse a finding of fact by the trial court unless it is clearly erroneous. *Louton v. Dulaney*, 2017 Ark. App. 222, 519 S.W.3d 367. As a rule, when the amount of child support is at issue, we will not reverse the trial court absent an abuse of discretion. *Id.* A trial court's conclusion of law, however, is given no deference on appeal. *Id.* In reviewing a trial court's findings regarding child support, we give due deference to that court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony.

SLIP OPINION

*McGee v. McGee*, 100 Ark. App. 1, 262 S.W.3d 622 (2007).

The child-support scheme in Arkansas is governed by Arkansas Supreme Court Administrative Order No. 10, which includes a family-support chart that indicates the amount of support due depending on the payor's income. *Johnson v. Young*, 2017 Ark. App. 132, 515 S.W.3d 159. All orders granting or modifying child support (including agreed orders) shall contain the court's determination of the payor's income, recite the amount of support required under the guidelines, and recite whether the court deviated from the family-support chart. Ark. Sup. Ct. Admin. Order No. 10(I) (2016). It is a rebuttable presumption that the amount contained in the family-support chart is the correct amount of child support to be awarded. Ark. Code Ann. § 9-12-312(a)(3)(B) (Repl. 2015). Only upon a written finding or specific finding on the record that the application of the family-support chart would be unjust or inappropriate, as determined under established criteria set forth in the family-support chart, shall the presumption be rebutted. Ark. Code Ann. § 9-12-312(a)(3)(C). The court may grant less or more support if the evidence shows that the needs of the dependents require a different level of support. Ark. Sup. Ct. Admin. Order No. 10(I).

A change in circumstances must be shown before a court can modify an order for child support, and the party seeking modification has the burden of showing a change in circumstances. *McGee*, *supra*. In determining whether there has been a change in circumstances warranting an adjustment in support, the court should consider remarriage of

4

SLIP OPINION

the parties, a minor's reaching majority, change in the income and financial conditions of the parties, relocation, change in custody, debts of the parties, financial conditions of the parties and families, ability to meet current and future obligations, and the child-support chart. *Id.*

Guin argues that the trial court failed to specify the basis for its "drastic" reduction of the child support due under the family-support chart or specify any reasoning for reducing the bonus percentage. She claims that the court erroneously based its decision on track-meet expenses claimed by McWhorter and her lack of income even though those factors were unchanged since the last order. She also claims that the court erroneously considered expenses paid by McWhorter for the parties' adult children.

Guin is incorrect. The trial court noted that the prior support order, which adopted a mediation agreement, did not comply with Administrative Order No. 10 because it failed to recite McWhorter's income or the amount of support required under the chart. Evidence was introduced, however, showing McWhorter's reduction in income since the prior order had been entered. The trial court found that this substantial reduction in income was a material change in circumstances, along with Guin's failure to earn any income despite obtaining a master's degree. Guin does not dispute McWhorter's reduction in income or that it constitutes a material change in circumstances.

The trial court's order next calculates McWhorter's total monthly net income from his salary ($10,497 twice a month) and investment income ($1777 a month) to be $22,771. The order states that, pursuant to the child-support chart, his income would result in

SLIP OPINION

monthly child support of $4714.91. Guin does not dispute these figures. The court then made findings regarding relevant factors in accordance with Administrative Order No. 10 that it concluded justified deviation from the chart.

The court first noted that McWhorter was a joint custodial parent, not a noncustodial parent. The guidelines assume that the parent paying child support will have visitation every other weekend and for several weeks during the summer. Ark. Sup. Ct. Admin. Order No. 10(VI). "Extraordinary time spent with the noncustodial parent, or shared or joint custody arrangements" is a factor that may warrant adjustments to child-support obligations. Ark. Sup. Ct. Admin. Order No. 10(V)(b)(6). Here, McWhorter had CM in his custody fifty percent of the time and had ZM in his custody seventy-five percent of the time—a significant difference compared to the limited visitation time the child-support chart assumes a payor exercises.

Other relevant factors to be considered by the court in determining appropriate amounts of child support include shelter, clothing, accustomed standard of living, recreation, insurance, transportation expenses, and other income or assets available to support the child from whatever source. Ark. Sup. Ct. Admin. Order No. 10(V)(a). The trial court found that McWhorter provided the majority of the clothing for the children, their entire automobile expenses, all of their track expenses, and the majority of the extra funds for the children. Referencing Guin's affidavit of financial means, the court also found that the expenses claimed for the children, her, and her husband only slightly exceeded the $5500 in

SLIP OPINION

support McWhorter had been paying.

The trial court's order complies with Administrative Order No. 10 in that it determines McWhorter's income, recites the amount of support due under the chart, and makes findings on relevant factors to justify deviation from the chart. The trial court's findings supported both its determination of monthly child support and the percentage of McWhorter's bonuses to be paid as child support.[1] The custody arrangement here, along with the expenses McWhorter pays for the children, justify the substantial deviation from the chart amount. Contrary to Guin's assertion, McWhorter did not have to prove a change in these factors since the last order. The material change in circumstances was established by McWhorter's undisputed reduction in income. We find no merit in Guin's argument that the court failed to supply the required calculations or reasoning and find no abuse of discretion in the amount of child support.

Although Guin argues that McWhorter failed to prove a change in the track-meet expenses or her income since the last order, these were not findings relied on by the trial court. The court's order does not state that there was a change in circumstances regarding track expenses; instead, the court found that McWhorter paid all the expenses of the children's track activities and that this was a factor in determining the appropriate amount

---

[1]Administrative Order No. 10 provides that a support order may include as its basis a percentage of a bonus to be received in the future in addition to the periodic child-support obligation. Ark. Sup. Ct. Admin. Order No. 10(II)(b). The amount listed for two dependents is twenty-one percent of a payor's net bonus. *Id*.

of support. The trial court did not find that there was a change in Guin's income but instead found that she had not earned any income despite obtaining an advanced degree since the last order. Although Guin claims that the trial court imputed income to her, this is not reflected in the court's order.

Guin also claims that it was error for the court to consider money McWhorter spent on their adult children since those expenses are discretionary. When McWhorter was questioned about these expenses, the trial court overruled Guin's relevancy objection. Ultimately, both parties testified that they spent money on their adult children, but these expenses were not among those listed by the trial court in finding that a downward deviation in child support was justified. We cannot say that Guin was prejudiced by any testimony on this subject.

Affirmed.

GLADWIN and HARRISON, JJ., agree.

*Rhoads Law* Firm, by: *Johnnie Emberton Rhoads*, for appellant.

*Everett, Wales & Comstock*, by: *John C. Everett*; and *Smith, Cohen & Horan, PLC*, by: *Matthew T. Horan*, for appellee.